## MAT DARNELL v. THE STATE.

### No. 405. Decided March 30, 1910.

**1.—Assault to Murder—Evidence—Undisclosed Motive of Injured Party—Withdrawal of Illegal Testimony.**

Where, upon trial for assault with intent to murder, the defendant interposed self-defense, it was reversible error to permit the party injured to testify to the undisclosed motives and intentions he had in his mind, and what he would have said when he approached the defendant and placed his hand *on defendant's shoulder,* and when defendant shot at him with a pistol; the defendant having testified that the injured party was in the act of making a violent assault upon him when he shot him; and this although the court withdrew said testimony after the argument of counsel thereon. Ramsey, Judge, dissenting.

**2.—Same—Evidence—General Reputation of Party Injured.**

Where, upon trial for assault to murder, the defendant had introduced testimony that the party injured was a dangerous man and that the latter had made threats against the defendant, there was no error in permitting the State to prove the general reputation of the party injured to be that of a peaceable and quiet citizen.

**3.—Same—Charge of Court—Threats.**

Where, upon trial for assault with intent to murder, the defense had introduced threats by the party injured against the defendant, the court properly charged on the law of threats.

**4.—Same—Charge of Court—Manslaughter—Aggravated Assault.**

Where, upon trial of assault with intent to murder, the evidence showed that the party injured was a man in robust health and that he was the aggressor, according to the defendant's evidence, and that the latter was an old man in feeble health, the court should have charged on the law of aggravated assault.

Appeal from the District Court of Fannin. Tried below before the Hon. Ben H. Denton.

Appeal from a conviction of assault with intent to murder; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*McGrady & McMahon,* for appellant.—On question of admitting testimony of undisclosed motives of prosecutor: Brumley v. State, 21 Texas Crim. App., 222; Clark v. State, 56 Texas Crim. Rep., 293, 120 S. W. Rep., 179; Adams v. State, 44 Texas Crim. Rep., 64; Roberts v. State, 48 Texas Crim. Rep., 378; Fuller v. State, 30 Texas Crim. App., 559; Wooley v. State, 64 S. W. Rep., 1054; Ball v. State, 29 Texas Crim. App., 107.

On the question that the error was not cured by court's withdrawal of testimony: Barth v. State, 39 Texas Crim. Rep., 381; McCandless v. State, 42 Texas Crim. Rep., 58; Henard v. State, 46 Texas Crim. Rep., 90.

On question of reputation of injured party: Gregory v. State, 50 Texas Crim. Rep., 73; Moore v. State, 46 Texas Crim. Rep., 54; Rail-

way v. Johnson, 92 Texas, 380; McFarland v. Railway, 88 S. W. Rep., 450.

*John A. Mobley,* Assistant Attorney-General, for the State.

DAVIDSON, Presiding Judge.—Appellant was convicted of assault to murder, his punishment being assessed at two years confinement in the penitentiary.

Without undertaking to go into a detailed statement of the facts, which covers something like forty pages, a brief summary of this part of the record may be thus stated: Appellant and the assaulted party, Master, were neighbors. Appellant's stock on several occasions strayed into Master's crops, and were taken up by Master and pay was demanded for these depredations. These matters continued until they engendered ill feeling between the parties. It is also shown that upon one occasion the rainfall had been quite heavy and an embankment had caused the water to be dammed up so as to flood a small piece of Master's ground covered with alfalfa. To relieve his land of the overflow Master opened the embankment and let the water off. It ran on to and over appellant's land. This also fomented trouble, resulting in a personal encounter, in regard to the facts of which encounter there is a divergence. The State's theory, through the evidence of Master, was that appellant raised a disturbance, had a knife at the time, and made an attack upon Master with it, cutting his clothes in two places, whereupon Master struck appellant two or three blows with a hoe which he had in his hand, and with which he had opened the embankment, breaking the hoe handle in striking appellant. Master accused appellant of having instituted prosecution against him for theft of chickens from a neighbor whose name was Word. Master testifies that the taking of the chickens was to play a joke on Word; that he and another party in fact did go to the hen roost of Word and get the chickens, and were detected and turned the chickens loose; that the case was not prosecuted in the court. There was evidence that Master had made threats against appellant, some of which were to the effect that he and two other parties had made up a sufficient amount of money so that one of them could give appellant a whipping, and the money would go to pay the fine of the party who did the beating. Another witness testified that a short time before the shooting, which was the cause of this prosecution, probably ten days prior, appellant was at the house of the witness Smith and got on his horse and rode away. About fifteen or twenty minutes after appellant left, Master came up to the house of this witness, and asked the witness if she saw that old coward (referring to defendant) run when he was coming up. Witness told him she saw him leave. Master then said the next time he got hold of him (referring to defendant) it would not be with just a hoe handle. On the occasion of the difficulty, which formed the predicate for this prosecution, appellant had gone to a store some 700 yards

distant from his residence for the purpose of purchasing some quinine and a small amount of rock candy, that he was sick, threatened with pneumonia, had a very bad cold, and that the quinine was to be used on account of said sickness. He had just made the purchase preparatory to leaving the store when Master came in, walked up to the stove, it being cool weather, warmed his hands a moment, went over to where appellant was standing by a refrigerator, placed his hand on appellant's shoulder, and was about to make some remarks, which will be noticed in a bill of exceptions, but which in fact he did not make. When Master placed his hand on appellant's shoulder, appellant fired one shot, and the difficulty ended, Master going away. The owner of the store, who was also postmaster, states, in this connection, that just after the purchase by appellant mentioned Master came in and asked the storekeeper to put him up some nails, and to get his mail. The witness went into the apartment cut off in the store as a postoffice to get the mail, when he heard a pistol shot; that he heard no conversation. This is the State's case. There was another witness sitting on the counter by the name of Garnett, who was introduced by appellant. He says appellant came in and bought some medicine, stating that he was sick, and that he was so ill that he came very near not being able to reach the store, and had to sit down and rest by the roadside. That he bought a bottle of quinine and a dime's worth of rock candy. In a few minutes after appellant came Master entered the store. Appellant was at the time standing by the stove, between the icebox and stove. Master came in and walked up to the stove and said "Howdy." Appellant spoke to him, and the next thing he saw Master grab appellant about the collar somewhere or about the neck, and said, "You old scoundrel, I understand you have been. . . ." That that is as far as he got and the pistol fired. That Master caught appellant by the neck and shoved him backward, or appellant went to step backward and fell over the ice chest, and was leaning back about half recumbent when the pistol fired; that Master was bending over him. Joe Richards, the storekeeper and postmaster, was in the postoffice part of the store at the time the shot was fired. Appellant testified in his own behalf, going into detail in regard to the former transactions and troubles between them, in which he states, in regard to the difficulty in which he was struck with a hoe, that he did not make any attack upon Master, but that Master attacked him with a hoe, and appellant is corroborated in his statement of the matter by another witness who was present. He admits having the knife open, said he had been whittling with it; that it was a small single blade barlow knife with a blade two inches in length. There were three persons present at the time of the first difficulty, appellant, Master and another witness. In regard to the difficulty at the store, he says he had a severe cold and cough, and had been down sick a week, and had not been able to do anything for some days, and on the evening of the difficulty he felt better and went down to the store to get rock candy and quinine,

That he lived about 700 yards from the store; that en route to the store he had to stop and rest on account of his feeble condition; that he put his pistol in his overcoat pocket when he started to the store; that he had it in the right hand pocket of his overcoat. As soon as he made the purchases he says he turned and started to walk out of the store, and had walked about half way to the door, when through the northwest window, which was open, he saw Master coming rapidly, and recalling his threats, he thought if he went out the door he would meet him on the porch, so he turned and walked back to the stove to avoid meeting him. He said Master entered the door at the front end and approached the stove behind which he, appellant, was standing, and when he got up within five or six steps of the stove Master spoke and he replied. That Master seemed to be in such a hurry that he, appellant, backed off around the stove to the east, and Master came right on up to the stove, was kinder rubbing his hands, and instead of stopping at the front end of the stove, came around and sprung at him, and called him an old son-of-a-gun; that these were the words he understood Master to use, and started to say something, and as he started to say it he jumped at him (appellant) which seemed to check his sentence, and grabbed him by the throat with both hands; that there was an old ice chest there, and when Master sprang against him it knocked him, appellant, over and caught his arm and had him in a sort of recumbent position; that he put his hand in his coat pocket, got his pistol and shot right over his shoulder. This practically ended the difficulty. His pistol had other loads in it, which he says he could have fired but did not. Master was a rather robust man, about 44 years of age, and about five feet and eleven inches or six feet in height. Appellant was 62 or 63 years of age, and in feeble condition for the reasons stated. This is a sufficient statement of the facts to bring in review the questions relied upon for a reversal.

1. The first bill of exceptions was reserved to the ruling of the court admitting certain testimony, which is referred to above, and which went before the jury. The bill shows that while L. N. Master, the alleged injured party, was on the stand, in his direct testimony brought out by the State before the jury, the following occurred: Said witness after stating that defendant shot him in the store, continued: "I went to the store, went in, walked up to the stove and was warming my hands and told Richards to give me some nails. Richards said he had to fix up the mail. I told him to look for my mail while in the office. I was warming my hands and defendant was standing there close by and there had been some misunderstanding, some talk had been made that was a misunderstanding between him and myself, and I thought while he was there I would speak to him about it and just correct it." To which testimony, that is, that the witness said: "I thought while he was there I would speak to him about it and just correct it." Appellant objected, and exception was reserved to its admission, on the ground that it was not admissible for any purpose

and the secret thoughts of the injured party were not binding upon the defendant, and his self-defense could not be curtailed by such secret thoughts, and the testimony should be confined to what was actually done and said. These objections were overruled, and witness said: "I just started and walked. I was about three feet from the stove, defendant was facing the front of the stove, and I just walked up and put my hand on his shoulder and started to say: 'Mr. Darnell, what about,' and about that time he had his right hand in his overcoat pocket, why he just shot me with a pistol." Said witness further testified in such direct examination as follows: "I laid my hand on defendant's shoulder and started to speak to him. I had started to say something to defendant about said misunderstanding, but I did not have time to say anything. I just walked up and put my hand on his shoulder and says: 'Mr. Darnell,' and started to say, 'what about,' and by that time he had shot me, and that was all I said before the shooting." Thereupon in the further direct examination of said witness by the State the following testimony was admitted by the court over appellant's objection: "Q. Now, when you put your hand on his, defendant's, shoulder (referring to the occasion above mentioned) and started to ask him about some misunderstanding, what was that? Answer. 'Well, Mr. Barton had gone to Ladonia to pick cotton.' Q. 'Just tell the matter that you was asking him about.' Answer. 'Mr. Barton had left his stuff in my charge, his crop there to see after.' Q. 'Just go ahead and detail the matter, the one that you were asking him about.' Answer. 'It was a place that he had rented.' Q. 'Just say now the rest of the sentence that was incomplete, the part that you did not get stated to him at the time he shot you. Just finish what you started to say to him.' Answer. 'Mr. Darnell, I want to have an understanding about that rent, that Mr. Cobb had rented the place out and you had told Mr. Cobb that I said Mr. Barton was not coming back and caused Mr. Barton to be rented out, and when he come back home from picking cotton he had no place and it was laid on me. Mr. Barton came to see me and it was laid on me that I had told Darnell.' Q. 'That is the sentence you started to detail to him at the time he shot you?' Answer. 'Yes, sir.'" To the introduction of all the foregoing testimony consisting of the above questions and answers, beginning with the question: "Now, when you put your hand on his, defendant's, shoulder and started to ask him about some misunderstanding, what was that?" Defendant then and there objected severally to each of such questions and each such answer and each part of such question and each part of such answer, in each instance upon the following grounds: that defendant did not deny that he shot Master, and that his defense was self-defense, and that the undisclosed intentions and secret thoughts of said witness (who defendant claims had assaulted him) could not be binding upon defendant, that defendant had a right to act upon appearances and the testimony should be confined to what the witness did and said, as distinguished from what

the witness intended to further say, and that such objectionable testimony would tend to cause the jury to believe that the witness had not and did not intend to assault defendant, while with such testimony excluded the jury would be more inclined to believe that witness had assaulted defendant and was pressing such assault when defendant shot him, and because same was hearsay, unknown to defendant, would place defendant in a prejudicial manner before the jury, and was incompetent, irrelevant and immaterial. The court overruled all objections, and appellant excepted. It is further stated as a fact that there was no testimony introduced in any way tending to show that defendant knew what said witness intended to say, as above set out, but did not say. It is further recited in the bill as follows: "It is a further fact that the first knowledge that defendant or his attorneys had that the court intended to exclude such testimony by his charge was after all the argument had closed and all of the charge of the court had been read to the jury down to that part of such charge which purports to exclude said testimony from the consideration of the jury, which is paragraph — of said charge. It is a further fact that the district attorney, Mr. Latimore, in his opening argument for the State to the jury in said case, as well as Mr. Thomas, who assisted in the prosecution and made the closing argument in the case for the State, each quoted to the jury said objectionable testimony and commented on the same freely as testimony injurious to defendant and as showing an absence of wrongful intention on the part of said Master. Nothing was said by the court regarding said testimony after it was admitted except what was read to the jury by said paragraph of said charge."

The court signs this bill with the explanation that the bill does not state exactly as it occurred, and attaches the stenographer's notes on the point, which are as follows and just as it occurred: "Q. 'Now, when you put your hand on his shoulder and started to ask him about some misunderstanding, what was it?' A. 'Well, Mr. Barton had gone to Ladonia to pick cotton'—'Defendant objects to that. I don't think it is a matter in which the defendant participated and what his intentions were was wholly undisclosed to the defendant and could not be binding on the defendant, a matter of which the defendant had no knowledge and is wholly inadmissible. We don't object to anything that was said there.' The court overruled the objection. Counsel for defendant: Q. 'Did you say anything to him about the matter that you intended to inquire about?' A. 'I had started to at the time.' By defendant: Q. 'Just state now what all you said.' A. 'Well, I didn't have time to say anything. I just walked up and put my hand on his shoulder and says, Mr. Darnell, and started to say 'what about,' and by that time he had shot me.'

"Defendant renews the objection that the undisclosed intention of this party can not be binding on the defendant and it is a matter wholly foreign to the issue in this case and prejudicial to his rights. The court: 'I don't know whether it is admissible or not; I will over-

rule the objection for the present,' to which ruling of the court the defendant excepted. By the State: 'Just tell the matter that you was asking him about.' A. 'Mr. Barton had left his stuff in my charge, his crop there to see after'—'Defendant objects to that because it is hearsay and transaction between other parties in which the defendant was not present; they are matters purely secreted in his own bosom and in no way could the defendant be bound by it.' The court: 'I will hear what the conversation was.' By State: Q. 'Just go ahead and detail the matter, the one that you were asking him about, the misunderstanding between yourself and him, the matter you was going to ask him about.' A. 'It was a place that he had rented'—'The defendant reserves an exception because it was a matter in which he was not a party to and he is not bound by it.' By district attorney: 'What I want the witness to do is to detail to the jury the matter which he was asking him about at that time, what you started to ask him about?' The court: 'Go ahead, I will hear it.' 'Defendant objects to all of this now that is being brought out, except what actually occurred and was said then and there between the parties, and it appears that the witness has already undertaken to testify to all that was said and done there at the time of the shooting—to outside matters that are not a part of that transaction and to which the defendant was not a party and the undisclosed intentions of the prosecuting witness are hearsay, irrelevant and not binding on the defendant, and the defendant objects.' The court: 'If he started to make a declaration and made part of a sentence, I think he would have a right to finish the sentence. I don't think it is admissible for him to say what he was going to do, I will hear what he says.' 'Defendant objects to the ruling of the court.' By State: Q. 'Just say now the rest of the sentence that was incomplete, the part that you didn't get stated to him at the time he shot.' 'Defendant makes the objection that what was not said is not admissible, and that the witness has already undertaken to state all that he did say and undisclosed intention of Master was not binding on or admissible against defendant.' The court: 'Go ahead.' 'The defendant excepts.' By State: Q. 'Just finish what you started to say to him.' A. 'Mr. Darnell, I want to have an understanding about that rent that Mr. Cobb has rented the place out and you had told Mr. Cobb that I said Mr. Barton was not coming back and caused Mr. Barton to be rented out and when he come back home from picking cotton he had no place and it was laid on me that I had told Mr. Darnell.' 'Defendant objects to all of this as being hearsay, and because undisclosed intentions of Master not binding upon or admissible against defendant.' Court overruled objections. Defendant excepted. By State: Q. 'That is the sentence you started to detail to him at the time he shot you?' A. 'Yes, sir.' 'And the court will see upon examination that I could not tell just exactly what the answer of Master would be and the court

will further see that I charged the jury not to consider the testimony.' "

The court, in the closing part of his charge, instructed the jury as follows: "The testimony of L. N. Master, introduced by the State, wherein he stated as follows: 'That he started to say to Mr. Darnell I want to have an understanding about that rent; that Mr. Cobb has rented the place out and you have told Mr. Cobb that I said Mr. Barton was not coming back and caused Mr. Barton to be rented out, and when he come back home from picking cotton he had no place and it was laid on me, Mr. Barton come to see me and it was laid on me that I had told Darnell,' you will not consider this testimony in reaching a verdict in this case."

It will be seen from the bill that all the remarks which Master said he intended to make, but which were not made by him to appellant, were permitted to go to the jury over appellant's objection, and that the attorneys for the State commented on it very freely as evidence of the fact that Master did not intend to provoke any difficulty with appellant, and that his mission was a peaceful one, and that in catching him by the shoulder, as stated by Master, or by the throat and pushing him backward, as stated by appellant and Garnett, was not intended to bring on a difficulty or make an assault upon appellant. We are of opinion that this testimony was inadmissible. It was a direct attack upon appellant's self-defense theory from the viewpoint he had of the assault made upon him by Master. The undiscovered and undisclosed condition of Master's mind and unspoken words were not binding upon appellant, and was, therefore, inadmissible. Brumley v. State, 21 Texas Crim. App., 222; Clark v. State, 120 S. W. Rep., 179; Adams v. State, 44 Texas Cr. Rep., 64; Roberts v. State, 48 Texas Cr. Rep., 378; Fuller v. State, 30 Texas App., 559; Wooley v. State, 64 S. W. Rep., 1054; Ball v. State, 29 Texas Crim. App., 107.

Nor—we are of opinion—was this error cured by the charge of the court. The State had used this testimony both before the jury and in the argument of the case as the most damaging testimony against appellant attacking his theory of self-defense. If Master had made the remarks which he says he intended to make, it would have placed appellant in much worse light before the jury on the theory of self-defense. It would have been notice to appellant that Master desired to settle the matter amicably with him. It eliminated from the case appellant's theory of self-defense. Appellant and Garnett had testified that Master had attacked appellant, catching him by the throat and pushing him backward on the icebox or refrigerator in a half recumbent position, and while he had him in this position appellant fired the shot. Master's undisclosed and undiscovered statements attacked this theory of appellant in its most vital point, and of all this appellant was ignorant. Had it been excluded at once the damage might have been less dangerous, but it was left in the case until after the termination of the arguments by counsel, and appellant and the

jury had no notice of the fact that it would be withdrawn until near the closing paragraph of the charge. We are of opinion that the withdrawal of it from the jury under the circumstances did not cure the error. See Henard v. State, 46 Texas Crim. Rep., 90; McCandless v. State, 42 Texas Crim. Rep., 58; Barth v. State, 39 Texas Crim. Rep., 381; Hatcher v. State, 43 Texas Cr. Rep., 237. In the McCandless case, supra, it was said that the admission of evidence which is of a material character and calculated to influence the jury is not cured by subsequent withdrawal from their consideration. This language is quoted with approval in Henard v. State, supra. In Barth v. State, supra, this language is found: "But it is said that the error of the court in admitting this testimony is cured by the subsequent exclusion thereof and withdrawal by the court of said testimony from the consideration of the jury. This question has been before the courts of this State in a number of cases. See Railway v. Levy, 59 Texas, 542; Miller v. State, 31 Texas Crim. Rep., 609. We think the true rule on this subject to be: If the testimony is not of a very material character, it may be withdrawn by the court, and the error thus cured; but if, on the contrary, the evidence was of a material character, and was calculated to influence or affect the jury, the withdrawal of the same from their consideration would not heal the vice of its admission. As was said in Railway v. Levy, supra: 'It is true that the admission of some kinds of testimony, which a jury is afterwards directed not to consider, may not be sufficient cause for reversal; but we are of opinion that where, in cases like the present, evidence which is calculated to arouse the sympathies of jurors in favor of the party who offers it, and to arouse the feelings of the jurors against the opposite party, is erroneously permitted to go before the jury, it is ground for reversal.' If this is a good rule in civil cases, by a stronger reason it ought to be the rule in criminal cases. In our opinion, the statements made by appellant were of a material character. Indeed, the testimony elicited from McDugal was the strongest evidence the State had to prove express malice, and we do not believe that the withdrawal of this testimony by the court could eradicate its effect from the minds of the jury." Other quotations might be made from authorities cited, and subsequent cases to those cited might be enumerated, but a sufficient number are cited, we think, to show the true rule as announced by the decisions in this State. If these enunciate the law, then the testimony admitted was of a most material and prejudicial nature. It practically eliminated appellant's theory of self-defense; it went before the jury over appellant's objection; it was argued and reargued to the jury as a reason why appellant's theory of self-defense should be disregarded. Had that testimony not been introduced, appellant's testimony and that of Garnett would have put appellant's case before the jury in much more favorable light from the standpoint of self-defense; even in the light

of the threats of Master to whip appellant, or to make an attack on him which promised to be more serious than the one previously made with a hoe, would have been regarded more highly doubtless by the jury on the theory of self-defense. None of the testimony contradicts the fact that Master approached appellant and caught him by the shoulder. In the light of the previous matters between the parties, and the threats, it may have been that the jury would have thought that appellant was justified in acting promptly, but when taken in the light of the testimony introduced by appellant through himself and Garnett, it was of first importance for him to act in self-defense, because Master had grabbed him by the throat, shoved or pushed him back over the ice chest, and had him practically under his control at the time the shot was fired. We are, therefore, of opinion that this matter is of such serious import that this conviction should not be permitted to stand.

2. It is contended the court erred in permitting the State to prove the general reputation of Master as a peaceable and quiet citizen. We are inclined to believe that this position is not well taken. Appellant had introduced a witness who testified that he told appellant that Master was a dangerous man. Appellant had proved by the witness Smith that Master had said that the next time he got hold of him, appellant, it would not be with just a hoe handle. We are of opinion under this condition of the record the State was justified in introducing evidence as to the peaceable reputation of Master.

3. This brings us to another objection that appellant urges to the charge of the court in regard to threats wherein this language is used: "When a person is charged with the offense of assault with intent to murder, and seeks to justify himself upon the ground of threats made against his own life, he is permitted, under the law, to introduce evidence of such threats, but the same shall not be considered as a justification for the offense, unless the person assaulted by some act then done, manifests an intention to execute the threats so made." Appellant also excepted to the 17th paragraph of the court's charge, where the court applied the law to this feature of the evidence, which was as follows: "Now, if you believe from the evidence that the defendant, Mat Darnell, assaulted L. N. Master at the time and place alleged in the indictment, but you further believe that prior thereto said L. N. Master had made threats against the defendant's life, and that at the time of the assault said Master, by some act then done, manifested an intention to execute the threats so made, or do the defendant some serious bodily injury, or you believe that at the time of the assault said Master had made or was making an unlawful assault or attack upon the defendant, or had done, or was doing some act or acts, which either alone or together with accompanying words said of Master, if any, produced in the defendant's mind as viewed from his standpoint, a reasonable apprehension of an assault, or of death or serious bodily injury at the hands of Master, and that he committed such assault to

protect himself from such danger or apparent danger, then said assault was in justifiable self-defense, and if you so find, or if you have a reasonable doubt as to whether said assault was in justifiable self-defense or not, you will find the defendant not guilty."

We are of opinion, as before stated, that the evidence was admissible, and we are further of opinion that the above charges are not subject to the criticism urged against them in view of the threats previously made, and which were introduced in evidence before the jury.

4. The charge upon manslaughter is criticised, and it is urged that the charge was not sufficient in submitting the difference between assault to murder and aggravated assault. There are some matters submitted in the charge on manslaughter that are not in the case, such as inapplicable general definitions which were not suggested by the testimony. Upon another trial we would suggest that the court be more explicit in directing the minds of the jury to the question of aggravated assault. Appellant was an old man 62 or 63 years of age, in a feeble condition, and in no way a match for his antagonist. The assault by Master upon appellant was not justified by any of the testimony. The State's evidence makes it an assault; while not a serious one, still it was an assault under the circumstances and environments of the parties, and from appellant's view of the matter, as shown by his evidence, it was quite a vigorous assault upon him by a much younger and more athletic man; that he was an old man in feeble condition by sickness, and was not a match for Master in a personal encounter. This phase of the law should have been given in charge. Under the testimony the assault upon appellant by Master was an aggravated assault under one phase of the statute, to wit: an assault by a man in robust health upon an old man who was in feeble health. Under the circumstances appellant had the right to resist the aggravated assault made upon him. He was not doing anything to Master when Master made the attack upon him; and it may be stated further that because this gave him the right of self-defense, still it did not deprive him of a full, fair charge on the law of aggravated assault. Under such circumstances, had the assault of appellant resulted in the death of Master, it might not have been greater than manslaughter, and wherever a homicide would not have been of a greater degree than ·manslaughter, death not resulting, the offense would be of no higher grade than aggravated assault.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*

RAMSEY, JUDGE.—I do not think this case ought to be reversed. If it be conceded that the court was in error in permitting the witness to testify to the remainder of an incompleted sentence of a perfectly friendly speech, his subsequent withdrawal thereof cured the error. The only cases where the withdrawal of evidence has not been held a cure for its admission are cases in which, as Judge Stayton says

in G., C. & S. F. Ry. Co. v. Levy, 59 Texas, 542, the testimony "is calculated to arouse the sympathy of jurors in favor of the party who offers it, and to arouse the feelings of the jury against the opposite party." In this connection see Smyth v. Caswell, 67 Texas, 567. The testimony here admitted was not, in its nature, inflammatory or calculated to arouse sympathy or excite resentment. I think no case ought to be reversed on account of a trifling and unimportant matter like this where the trial court in the most impressive and effective manner possible cures the error.