## T. B. CLEMENTS v. THE STATE.

### No. 866. Decided February 1, 1911.

**1.—Murder—Continuance—Newly Discovered Evidence.**

Where, upon appeal from a conviction of murder, the cause was reversed and remanded for certain errors, it was not necessary to pass upon the question of the application for continuance and newly-discovered evidence set up in the motion for new trial.

**2.—Same—Evidence—Declarations of Third Parties—Conspiracy—Withdrawal of Illegal Testimony.**

Upon trial for murder, where the State failed to show a conspiracy between defendant and others, it was reversible error to admit in evidence the declarations of third parties made in the absence of the defendant, and to permit this testimony to remain before the jury until the entire testimony was closed, although due exceptions had been made thereto; especially where the State's counsel was permitted to refer to this testimony in his argument. Following Darnell v. State, 58 Texas Crim. Rep., 585, and other cases.

**3.—Same—Evidence—Declaration of Third Parties—Practice in District Court.**

Where, upon trial of murder, the State failed to show any conspiracy between defendant and others, it was reversible error to admit in evidence the declaration of defendant's sister and another State's witness, to the effect that the defendant had killed the deceased, upon hearing the shot fired, in the absence of the defendant, and they not seeing or being present at the time of the homicide, and to permit this testimony to remain before the jury until all the testimony was closed.

**4.—Same—Evidence—Acts and Declarations of Third Parties.**

Upon trial of murder, where there was no evidence of a conspiracy, it was reversible error to permit a State's witness to testify to the acts and declarations between third parties made a short time before the killing in the absence of the defendant and that the deceased was called out by some one unknown to the witness shortly before the killing; and to suffer this testimony to remain before the jury until the argument began, and then not even withdrawing all of it.

Vol. LXI Crim.—11.

**5.—Same—Evidence—Withdrawal of Illegal Testimony.**

Upon trial of murder, where the evidence showed no conspiracy, and the State was allowed to introduce the acts and declarations of third parties made in the absence of the defendant, it was reversible error to overrule the objections of defendant thereto at the close of State's testimony, forcing the defense to introduce its testimony, and to permit the State's counsel to assert in the presence of the jury that there was a conspiracy to kill the deceased.

**6.—Same—Argument of Counsel—Want of Conspiracy.**

Where, upon trial of murder, the evidence showed that there was no conspiracy between defendant and others, it was error to permit State's counsel, after most of the illegal testimony had been withdrawn by the court, to argue upon such testimony before the jury.

Appeal from the District Court of McLennan. Tried below before the Hon. Richard I. Munroe.

Appeal from a conviction of murder in the second degree; penalty, fifteen years imprisonment in the penitentiary.

The opinion states the case.

*J. W. Taylor* and *J. N. Gallagher,* for appellant.—On question of admitting in evidence the acts and declarations of third parties made in the absence of the defendant, and allowing such testimony to remain before the jury until all the testimony was closed: Morton v. State, 43 Texas Crim. Rep., 533, 67 S. W. Rep., 115; Strange v. State, 38 Texas Crim. Rep., 280, 42 S. W. Rep., 551; Godwin v. State, 38 Texas Crim. Rep., 466, 43 S. W. Rep., 336; Woodward v. State, 50 Texas Crim. Rep., 294, 97 S. W. Rep., 499; Darnell v. State, 58 Texas Crim. Rep., 585, 126 S. W. Rep., 1122; Henard v. State, 46 Texas Crim. Rep., 90, 79 S. W. Rep., 810; McCandless v. State, 57 S. W. Rep., 672; Barth v. State, 46 S. W. Rep., 228; Bowen v. State, 47 Texas Crim. Rep., 137, 82 S. W. Rep., 522; Drake v. State, 29 Texas Crim. App., 265, 15 S. W. Rep., 725; Ware v. State, 49 Texas Crim. Rep., 413, 92 S. W. Rep., 1093; Parker v. State, 46 Texas Crim. Rep., 461, 80 S. W. Rep., 1008; Cogdell v. State, 43 Texas Crim. Rep., 178, 63 S. W. Rep., 645; Welhousen v. State, 30 Texas Crim. App., 623, 18 S. W. Rep., 300.

On question of permitting State's counsel to state in the presence of the jury that the defendant conspired with others to commit the murder: Authorities above cited.

*C. E. Lane,* Assistant Attorney-General, for the State.—From the entire evidence, as shown by the record, the question of whether or not the appellant acted in self-defense, in taking the life of Albert Harris, deceased, was a very close one. Is it not true under such conditions that the statements made by other parties in the trial of this case, over the objections of appellant, as shown by his various bills of exception, in the absence of appellant, and which were followed up by argument of counsel, that a conspiracy existed, without any proof of such conspiracy, would be reasonably calculated to turn

the scales in favor of the State improperly? Under the Constitution and laws of the State of Texas every person charged with crime is guaranteed a fair and impartial trial. Has this defendant had such trial? Is it not the duty of the Assistant Attorney-General to present the law and insofar as possible to assist in the execution of the law as it is written, and can it be said to be his duty to insist upon a conviction, where the rules made for the government of trial courts have been violated in such manner as to injure the rights of the defendant, and show a strong probability that he has not had that fair and impartial trial guaranteed to him under the Constitution?

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of murder in the second degree, and his punishment assessed at fifteen years confinement in the penitentiary.

The court submitted murder in the first and second degrees, manslaughter and self-defense. This statement is made to show the view the trial court took of the evidence, and to avoid the necessity, as we view the matter, in making a statement of the facts.

1. The question in regard to the application for continuance and newly discovered evidence set up in the motion for new trial, will not be considered inasmuch as these matters may not arise upon another trial.

2. Over the objection of appellant, Will Moore was permitted to testify that he was at the dance where the killing occurred, and was on the gallery about an hour and a half before the killing, and there heard a conversation between Chris Gibson and Jim Clements, the latter being a brother of appellant, and that these two men had only been at the dance a few moments prior to the occurrence of the conversation. The witness was then asked to repeat the conversation heard between the parties. Various and sundry objections were urged to this testimony, all of which were overruled, and the witness testified that Gibson said to Jim Clements, "We will do our work and go," and that Jim Clements remarked, "No, let's stay and dance awhile," and that the parties then went into the house; that it was Jim Clements who said, "No, let's stay awhile and dance;" and it was Gibson who said, "Let's do our work and go." Objections were again urged to the admission of this testimony, and after the State had finished its testimony and rested, motion was made to exclude the evidence from the jury in regard to the conversation and the occurrences between Gibson and Jim Clements. The court overruled this motion and appellant again excepted. It is further recited that the testimony remained before the jury all the time while appellant was introducing his testimony, and was referred to and inquired about various times during the introduction of evidence, and not until after all the evidence was in and the case closed and ready for argument did the court exclude the testimony from the consideration

of the jury. In this connection it was also shown that Jim Clements was a brother of defendant, Tebe Clements, and a material witness for the defendant; that he and Gibson both denied that any such conversation occurred as testified by Will Moore; and it was further shown that counsel for the State frequently asserted to the court that they expected to prove a conspiracy to kill deceased at the time and place at which he was killed, and to connect defendant with such conspiracy, and it was shown, as a fact, that no such evidence either showing or tending to show a conspiracy was ever introduced by the State, and it was further shown, as a fact, that counsel for the State, in argument of the case before the jury, claimed there was a conspiracy to kill deceased at the time and place at which he was killed, and that defendant, Chris Gibson, Jim Clements and George Gifford and others were members of such conspiracy, and the appellant also objected to this argument on the ground there was no such evidence before the court. The court overruled the objection on the ground that the State had the right to argue its theory of the case before the jury. Appellant's objection and motion to exclude the testimony should have been sustained, and State's counsel not permitted to argue the matter of conspiracy under the recitations of this bill. The bill is signed without qualification by the judge. Appellant was in no way bound by this testimony. He was not connected with it. The State utterly failed to show a conspiracy between the parties, and the judge so certifies by signing and approving the bill. The court, however, in the charge to the jury withdrew from their consideration this evidence. It was said in Darnell v. State, 58 Texas Crim. Rep., 585, 126 S. W. Rep., 1122, "The State had used this testimony both before the jury and in the argument of the case as the most damaging testimony against appellant attacking his theory of self-defense." It was further said in the Darnell case, "We are of opinion that the withdrawal of it from the jury, under the circumstances, did not cure the error." Quite a number of cases are cited in the Darnell case in support of the ruling. In McCandless v. State, 42 Texas Crim. Rep., 58, it was held that the admission of evidence of a material character calculated to influence the jury is not cured by subsequent withdrawal from their consideration. And in Henard v. State, 46 Texas Crim. Rep., 90, this language was used: "But it is said that the error of the court in admitting this testimony is cured by the subsequent exclusion thereof and withdrawal by the court of said testimony from the consideration of the jury. This question has been before the courts of this State in a number of cases. See Railway v. Levy, 59 Texas, 542; Miller v. State, 31 Texas Crim. Rep., 609. We think the true rule on this subject to be: If the testimony is not of a very material character, it may be withdrawn by the court, and the error thus cured; but if, on the contrary, the evidence was of a material character, and was calculated to influence or affect the jury, the withdrawal of the same from their

consideration would not heal the vice of its admission." It was said in Railway v. Levy, supra, "It is true that the admission of some kinds of testimony, which a jury is afterwards directed not to consider, may not be sufficient cause for reversal; but we are of opinion that where, in cases like the present, evidence which is calculated to arouse the sympathies of jurors against the opposite party, is erroneously permitted to go before the jury, it is ground for reversal." These extracts are from the Darnell case, 58 Texas Crim. Rep., 585, supra. If this is the rule in civil cases, by a much stronger course of reasoning it ought to be the rule in criminal cases. In our opinion the evidence admitted, and the course of conduct, and the manner of putting the whole matter before the jury, taken in the light of the argument, was of a most damaging nature to appellant's cause. If there had been a conspiracy between appellant Gibson and Jim Clements this would have been rather a pregnant fact, damaging in its nature and far reaching in its consequences, against appellant's issue of self-defense, and if there was such conspiracy, it would eliminate as well the issue of manslaughter.

3. The State placed on the stand Miss Fannie McMorrough, and proved by her that she was present at the dance on the night of the killing, and was in the house at the time and heard the report of the gun. Thereupon the State asked her whether at the time the shots were fired she heard anybody say anything about the shooting. Various objections were urged to the question. The State, in reply to these objections, stated that the prosecution was going to show that Mrs. Hughes knew that Albert Harris was to be killed that night, and that she knew of a conspiracy existing at that time to kill him. Objections were urged to these remarks of the counsel, and the court instructed the jury not to consider the remarks and withdrew the remarks, but the court overruled the objections and permitted the witness to testify that just as quick as the pistol fired at the time of the killing, Mrs. Hughes, a sister of defendant, said, "Tebe has killed Albert; Tebe has killed Albert; my dear brother; my dear brother." The witness further testified that appellant had not come into the house at the time this language was used. Various objections were urged to this evidence, and before the introduction of his testimony began he urged the court to exclude this testimony from the jury, which motion to exclude was by the court overruled, and exception again taken. Said testimony remained before the jury during the introduction of appellant's testimony, and the appellant attempted to rebut said testimony by said Mrs. Hughes, who was a witness for appellant, and she testified denying that she used the language attributed to her by said witness, but in the course of her examination as to what did occur, which examination was rendered necessary by the admission of said illegal evidence and the failure to exclude the same before the appellant began the introduction of his testimony said witness did state that she, on hearing the pistol

fire, turned to her sister-in-law, who is the wife of appellant, and remarked that she, the said sister-in-law, knew what that was about. At the close of all the testimony, on motion of appellant this evidence was excluded, and the jury instructed not to consider it. This bill shows, as a fact, that appellant was not present and was not in the house at the time these remarks were made. The killing occurred outside of the house, and appellant had not entered the house after the homicide until these remarks had been made, and could not be in any way bound by them. This conversation and these statements were injurious in their effect, and occurred between other parties to which appellant was in no way a party, and was, therefore, inadmissible against him. This evidence ought not to have been permitted and the objection to it should have been sustained at once, but the objection was not only overruled, but it was permitted to remain before the jury until the close of the case when appellant was forced to go into an examination of the entire matter to rebut as well as he could the statements. Then after the jury got the full benefit and effect of the illegal testimony, the court withdrew it. What was said in the previous section of the opinion, and the authorities there cited, are directly applicable to this question. Darnell v. State, 58 Texas Crim. Rep., 585, 126 S. W. Rep., 1122.

4. Miss Ruth Payne was used by the State as a witness. She stated she was at the dance the night the killing occurred, and was in the house at the time of the shooting; that she heard the shots. The State thereupon asked her if after the shots were fired she heard anybody say anything. All sorts of objections were urged to this question. The court overruled the objections, and permitted the witness to testify, that as soon as the shots were fired Mrs. Hughes, a sister of the defendant, turned around and said, "I know what it means; I know what that is; Tebe has killed Albert; Tebe has killed Albert." This bill recites practically the same as the preceding bills. This evidence remained before the jury all the time during the introduction of appellant's testimony, and the court refused to exclude it until appellant moved for its exclusion when the testimony in the case had been closed. The court then excluded it. This was error, for reasons stated in the matters heretofore discussed.

5. Mrs. Will Moore was used by the State as a witness, and proved by her that she was at the dance when the killing occurred; that she went there with her husband, Will Moore, who was also a witness in the case; that she had been there about an hour before the killing occurred; that that night she saw a man whom she has since learned was Chris Gibson and another man whom she has since learned was George Gifford, and that she saw Jim Clements that night; that Jim Clements was a brother of the defendant, and further proved that she knew Mrs. Hughes, and that Mrs. Hughes was a sister of defendant, and that a short while before the shooting she

heard a conversation between Chris Gibson and Jim Clements in the dance room, and the State asked her to detail the conversation. Various objections were urged to this. It was shown as a fact that appellant was not present in the room where said conversation occurred, but was outside of the room, and not in hearing. All these objections were overruled, and the witness testified that Chris Gibson said, "If there is not something doing right away we have got to be going," and that Jim Clements said, "If you say so, they won't dance another damned set in this house tonight;" and the said Jim Clements further said, "I am going down and get my—— (I understood him to say) twenty-two." Witness further testified that the said Mrs. Hughes then turned to the deceased, Albert Harris, at which stage the defendant objected to anything that was said by Mrs. Hughes to the deceased, Albert Harris, upon the same grounds as heretofore stated, and the court overruled said objections and permitted said witness to testify, and the witness did testify before the jury, that Mrs. Hughes said to the deceased, Albert Harris, "Albert, they are going to raise a fuss with you," and that the deceased replied, "I didn't come here for any fuss." That Mrs. Hughes then remarked, "They are all cowards; they won't do anything." Witness further testified that the deceased was right by her, standing with his arm against the door and calling for the set they were dancing, and that he called the set out, and that about six minutes before he was killed someone whom she did not know called him out, but that she thought the person who called him was Chris Gibson, but did not know, to which testimony appellant, on the same ground as before stated, objected, and the court overruled the objection, and permitted the witness to so testify before the jury. Said witness further testified that she was in the room where the dance was held at the time the shots were fired, when the deceased was killed, and that Mrs. Hughes was in the room at the time, and upon being asked what Mrs. Hughes did, if anything, at that time, the appellant again objected to the question and any answer that might be given on the ground heretofore given in this bill, and the objection was overruled, and the witness permitted to testify that when the shots were fired Mrs. Hughes jumped up and clapped her hands and said to someone whom she supposed to be Mrs. Clements, wife of defendant, "Effie, I know what that means, Tebe has killed Albert; poor Tebe!" and "that Mrs. Hughes then went crying and taking on." In this connection, it is further shown that during all the occurrences so testified about by said witness as hereinbefore recited, the appellant was not in the room, but absent therefrom and on the outside and did not come in until after the same was all over. Objections were again urged as before recited. The appellant, at the close of the State's testimony, and before he began the introduction of his testimony, moved the court to exclude all the foregoing evidence so admitted over his objection in order that the defendant might not have to

introduce evidence in rebuttal or in an attempt to rebut the same in order that the same might be removed as early as possible from the consideration of the jury. All these objections were overruled. Again, at the close of the entire testimony in the case appellant moved the court to exclude this testimony before the argument began. The court then excluded it except the testimony that some person called the · deceased out just a few minutes before he was killed. Objections were again urged. This was clearly error. These were acts and matters and conversations occurring in the absence of the appellant, and with which he was not connected, and the bill shows that he had no knowledge of them, and no participancy in them and had no connection with them. It was not shown that he called out the deceased from the room or was in any way instrumental in so doing.

6. Another bill recites that the State having proved by the witness Will Moore, over the objection of the appellant, a certain conversation alleged to have occurred about one and one-half hours before the killing between Chris Gibson and Jim Clements, as shown by bill of exceptions No. 2, which is referred to, and having proved by Miss Fannie McMorrough, over the objection of appellant, certain alleged declarations of Mrs. Alice Hughes, alleged to have been made at the very time of the killing, as shown by bill No. 3, which is referred to, and having proved by Miss Ruth Payne, over objection of the appellant, certain alleged declarations of Mrs. Hughes, alleged to have been made in the house at the very time of the killing, as shown by bill of exceptions No. 4, which is referred to, and having proved by the witness Mrs. Will Moore certain alleged acts and declarations of said Mrs. Hughes, alleged to have occurred in the house at the very time of the killing, and certain conversations alleged to have occurred between Chris Gibson and Jim Clements in the house a short time before the killing; and a certain conversation said to have occurred between Mrs. Hughes and deceased, Albert Harris, a short time prior to the killing, all of which is shown by bill of exceptions No. 5, and here referred to, and each bill so referred to is made a part of this bill to avoid repetition, and the State having rested its case, the appellant moved the court to exclude said testimony of said witnesses aforesaid, and all of the same from the evidence and to instruct the jury to disregard the same because the same and all of the same was admitted in evidence over the objection of the defendant, and because the defendant was shown not to have been present at the time of said occurrences and declarations, and because the defendant was not shown to have known thereof and not shown to have been connected therewith or in any way made responsible therefor, and because said testimony involved the acts and declarations of third parties, and involved conclusions of the witnesses, and was hearsay, irrelevant, immaterial, and incompetent as evidence against the defendant. In this connection it was shown as a fact that de-

fendant was not present at any of the times involved in said testimony aforesaid and there sought to be excluded, and that the State failed to in any way connect him therewith, or to show in any way that he knew of the same. This motion was made and overruled, and defendant was required to proceed with the introduction of his evidence with such testimony and the issues made thereby before the jury, and the defendant did proceed to introduce his testimony and to rebut so much of said testimony sought to be excluded as he could, and said illegal and immaterial testimony was thereby kept before the jury and in the minds of the jury during the whole of the examination of the defendant's witnesses. In this connection it is shown that the State's counsel, before the court and to the court and in the presence and hearing of the jury repeatedly charged that there was a conspiracy to kill the deceased at the time and place in question, and that the defendant, Mrs. Hughes, Jim Clements, Chris Gibson, and George Gifford were members of such conspiracy; and it is further shown, as a fact, that each of said witnesses were on cross-examination by the State charged with knowing in advance that said killing was to take place, and charged with aiding and abetting the same, all of which was denied by said witnesses, and each of them, but which was brought and kept before the jury by such form of cross-examination and the failure of the court to exclude said testimony. Said testimony remained before the court and jury until all the evidence was introduced, and, the case closed and ready for argument with the defendant seeking still to minimize as far as possible the error of the court, he again moved the court to exclude said testimony, and the court did exclude the same, except the testimony of Mrs. Will Moore to the effect that somebody came and called Albert Harris out of the room just before the killing. This testimony, as heretofore decided in this opinion, was clearly inadmissible and illegal, as shown by the bills of exception, and should have been excluded. This and the prior bills recite the fact as a fact that there was no conspiracy shown between the parties, which bills were approved with these statements of fact contained in them. Upon what theory this testimony could have been admitted we are unable to appreciate, and we can not understand why the appellant was required to meet and rebut this character of testimony and thus continue the matter before the jury until the close of the testimony. Under all the authorities this testimony was clearly inadmissible, and the whole matter was of such a damaging character that its exclusion at the end of the testimony did not cure such error.

7. There was another bill of exception reserved to the argument of the State's counsel, in which he charged repeatedly in his argument that there was a conspiracy between the defendant, Gibson, Jim Clements, and Gifford to bring the deceased to the dance and provide an occasion for defendant to kill him, and the defendant did kill him in pursuance of said agreement and conspiracy. Ob-

jection was urged to this. Upon another trial this character of argument should not be indulged.. It is recited in the bill of exception that the State utterly failed to show any conspiracy. This is made patent by what we have said heretofore in regard to the previous bills of exception and statements contained in them. If a conspiracy had been shown, counsel would have had the right to discuss that question before the jury and urge it for all it was worth in making up their verdict. Having utterly failed to so prove, counsel would not be authorized to inject as facts and as a basis for his argument matters that were not only not proved, but certified by the court as not being proved.

For the errors indicated the judgment is reversed and the cause is remanded.

*Reversed and remanded.*