## TIP McINTOSH v. THE STATE.

### No. 5246.    Decided June 11, 1919.

**1.—Rape—Indictment—Judicial District.**

Under the statute, 254 C. C. P., which has been held to be constitutional,. a prosecution for rape may be commenced and carried on in any county of the judicial district in which the offense is committed, and the court takes judicial cognizance that the county of the prosecution and the county in which the offense is committed are in the same judicial district.

**2.—Same—Evidence—Complaint by Prosecutrix—Res Gestae.**

Upon trial of rape, there was no error in admitting testimony to the effect that when prosecutrix came to the house of the witness shortly after the alleged rape she told witness what had occurred  between her and the defendant.  Following Sentell v. State, 34 Texas Crim. Rep., 260.  This testimony was admissible as *res gestae*, out-cry, and in rebuttal of the defendant's testimony that the transaction was simulative.

**3.—Same—Evidence—Cross-Examination—District Attorney.**

Where, upon trial of rape, the evidence of the prosecutrix was pointed and positive and was corroborated by the testimony of other witnesses, the District Attorney should not have been permitted to ask the defendant while on the witness stand if he had not written to some widows at Houston and Dallas, etc., or why he prosecuted his son for forging his name to a check of one dollar, and to make other derogatory remarks with reference to the defendant, all of which acted prejudicially to the rights of the defendant and resulted in the conviction for imprisonment in the penitentiary for life.

Appeal from the District Court of Upshur.  Tried below before the Hon. J. R. Warren.

Appeal from a conviction of rape upon a female under the age of consent; penalty, life imprisonment in the penitentiary.

The opinion states the case.

*Simpson, Lasseter & Gentry,* and *A. J. Britton,* for appellant.— On question of declarations by prosecutrix, Reddick v. State, 35 Texas Crim. Rep., 463;  Valdez v. State, 71 id., 487;  Hamilton v. State, 74 Texas Crim. Rep., 219, 168 S. W. Rep., 536.

On question of misconduct of district attorney, Bullington v. State, 78 Texas Crim. Rep., 187, 180 S. W. Rep., 679;  Black v. State, 79 Texas Crim. Rep., 28, 187 S. W. Rep., 378 332;  Hodges v. State, 73 Texas Crim. Rep., 378, 166 S. W. Rep., 512;  Grimes v. State, 64 Texas Crim. Rep., 64, 141 S. W. Rep., 261.

*E. A. Berry,* Assistant Attorney General, for the State.—On question of venue, Clemmons v. State, 39 id., 279.

LATTIMORE, JUDGE.—Appellant was convicted of statutory rape in the District Court of Upshur County and his punishment fixed at imprisonment in the penitentiary for life, and he appeals.

27—85 T. C. R.

Appellant's first contention is that the indictment is bad because the same was returned by the grand jury of Smith County and same charges that the offense was committed in Wood County. This court takes judicial cognizance of the fact that Wood and Smith Counties are in the same judicial district; by the express terms of article 254, C. C. P., which has been held to be constitutional by this court, a prosecution for rape may be commenced and carried on in any county of the judicial district in which the offense is committed. There is no reason shown why the court might not for legal reasons have transferred a case so commenced to any other county of the same or another district. These assignments are over-ruled.

Appellant's next complaint is that the witness Mattie Wolf was permitted to testify over objection, that when prosecutrix came to the house, after the alleged rape, she "told me what had occurred between her and the defendant." This matter is contained in appellant's bill of exception No. 3. It therein appears that after prosecutrix had testified that appellant had intercourse with her in a little house about 150 yards from the residence, and that she and appellant walked back to the house, that soon after they reached said residence, prosecutrix had a conversation with the witness Mattie Wolf, her sister. The State proved by Mattie Wolf that prosecutrix "told her what had occurred between her and the defendant." The objection to this evidence was that it was hearsay, not in appellant's presence or hearing, not *res gestae*, and not the proper manner of eliciting the fact that prosecutrix made an outcry. An examination of the testimony of Mattie Wolf shows that she said this statement was made to her "right away when prosecutrix came back;" that prosecutrix was nearly crying and that she then went with her down to the little house and saw blood on the floor. In Sentell v. State, 34 Texas Crim. Rep., 260, the witness overtook prosecutrix a half mile from the home of defendant where the alleged assault occurred, and she then told him defendant had insulted her. Later she also told the same to her mother. This court affirmed the case and the Presiding Judge used the following language in the opinion: "The fact that complaint of the outrage was made by the injured female in cases of rape and assault to rape, is admissible in evidence and the length of time intervening goes to the weight and not to the admissibility of the testimony. . . . The details of the transaction were not stated by this witness." In Castillo v. State, 31 Texas Crim. App., 149, details of the attack as given by the prosecutrix a half hour after the assault, were held admissible as *res gestae*. In Roberson v. State, 49 S. W. Rep., 398, where the alleged rape occurred on Thursday, the statement made to the mother of prosecutrix the following Sunday was held admissible, same being to the effect that, "I told mother Sunday what defendant had done." In Hamilton v. State, 74 Texas Crim. Rep.,

219, 168 S. W. Rep., 536, which was cited by appellant, this court approved the admission of testimony in a statutory rape case where the offense was alleged to have been committed in a branch some distance from the house, and the witness testified when the prosecutrix returned to the house, "Julia admitted to me that she had just had intercourse with defendant."

We think the testimony objected to admissible for three reasons: 1st. Same was *res gestae.* 2nd. Same was admissible as an outcry. 3rd. Same was admissible as sustaining the prosecutrix in view of the fact that the whole effort of appellant throughout the trial was an endeavor to show that the transaction was simulated and resulted from the *animus* of certain parties towards appellant. The condition of the prosecutrix and the nearness in time, makes the statement *res gestae;* the details were not given, and same was made to the first person she saw after the alleged assault, which makes it an outcry; and the other reason is well sustained by the whole evidence.

In this case appellant was charged with the rape of his little stepdaughter whose mother he had married when she was almost an infant and she had made her home with him practically all of her life; the evidence of the child was pointed and positive and corroborated by what she said to her sister and the testimony of physicians who examined the child soon after the occurrence. On cross-examination the State's attorney asked appellant, while on the witness stand, if he had not written to some widows at Houston and Dallas to get them to come and keep house for him before his arrest. Answering over objection that he had, he was then asked if he had tried to hire any widows in Wood County (the county of his home), and answering this over objection, he stated he had not, and was again asked by State's counsel: "But you went to Dallas and Houston?"

Appellant had testified in chief that his son was indicted for forgery of appellant's name to a check, said evidence being introduced as part of the evidence of his claim that the wife of his son was the instigator of the prosecution in the instant case; on cross-examination he was asked if he had had his son indicted for forging his name to a check for five dollars, and he stated that he didn't do it; over objection he was then asked: "So you were willing for your boy to go to the penitentiary rather than pay $5?" Appellant had testified in chief that a few days before he was arrested on Tuesday he had gotten word that his son had signed his name to another check than the one for forging which he was indicted, and that he had told him that if he did not quit signing his name to checks he would go to the penitentiary, and that his son's wife spoke up and said: "Yes, and somebody else will go to the penitentiary too." On cross-examination the State asked the appellant the amount of this last check, to which he answered "one dollar," whereupon, over objection, the following question was asked: "So you were after your son for forging your name to a check for $1"; and when ob-

jection was made to this question by appellant, the district attorney in an excited and angry manner said to appellant: "You did not want to leave the jury under the impression that it was for a thousand dollars did you?" In his closing argument to the jury the district attorney said: "A man who would put his son in the penitentiary for a dollar will rape his own daughter." And upon being stopped by the court upon request of appellant and the jury instructed not to consider said remark, the district attorney said: "I think it is proper and that's what I deduce from the testimony." In said closing argument, referring to one of appellant's counsel, he said of him that Simpson had been district judge for twelve years and had during all that time stood for the enforcement of the law but that he "has had a change of heart since he was on the bench; when blood money begins to flow into his pockets he has a change of front." In said closing argument the State's attorney said: "There is not enough gatlin guns to make the defendant's attorney put his reputation in issue, and I dare him to do it." During the introduction of the testimony the district attorney asked appellant, while on the stand: "I want you to answer this question and tell me why this child was tired of living with you and wanted to live with her uncle when she had been living with you all her life." And upon objection, and before it was answered, asked the following question: "Will you tell the jury why she wanted to go and live with her uncle that she had not seen in ten years rather than live with you? What had you done to her?" To which question appellant was required to answer over objection. State's counsel also asked if appellant owned his farm at the time of the alleged rape, and then asked the following: "The defendant does not now own it?"

Other matters of misconduct are set out in other bills of exceptions. Appellant was on trial for his life. The juries of Texas may be trusted to care for the interests of the State in any case without side issues being forced upon them which are well calculated to prejudice them against the appellant. Some of these matters were not permitted to be answered by the court and some of them the jury were instructed not to consider, but as has often been strongly put;—the jury are but human and such an instruction is practically valueless except possibly to preclude discussion of such matters. Impressions made on the mind can no more be erased by such instructions than the memory of a curse or a blessing can be torn out and thrust away by the effort of the will. When prejudicial and persisted in so that same appear not occasional or accidental, and when it further appears from the verdict that the same may have affected the result, the case will be reversed for such misconduct. Appellant was given a life sentence. It may be shown to be deserved. by the pertinent facts, but it is our opinion that the issue should be

decided without the presence of the prejudicial and harmful matters referred to.

The case will be reversed and remanded for a new trial.

*Reversed and remanded.*