**Wayne Dotson WALDO, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 448–86.

Court of Criminal Appeals of Texas, En Banc.

Feb. 10, 1988.

---

Mark Stevens, San Antonio, for appellant.

Sam D. Millsap, Jr., Former Dist. Atty. and Fred G. Rodriguez, Dist. Atty., and Raymond J. Hardy, Jr. and Margaret M. Embry, Asst. Dist. Attys., San Antonio, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

CLINTON, Judge.

Appellant was convicted of the offense of murder and his punishment assessed by the jury at 99 years confinement in the Texas Department of Corrections. On his appeal to the San Antonio Court of Appeals appellant complained of an allusion to his postarrest, post*Miranda* silence made by a police investigator during the State's case in chief. The court of appeals ruled that the trial court's instruction to the jury to disregard the investigator's remark "cured any possible error." *Waldo v. State*, 705 S.W.2d 381, 384 (Tex.App.—San Antonio 1986). One justice dissented. We granted appellant's petition for discretionary review in order to determine the efficacy of an instruction to disregard comment on an accused's decision to remain silent after he has been placed under arrest and read his *Miranda* rights. Tex.R.App.Pro., Rule 200(c)(2) and (5).

### I.

A hearing was held on appellant's motion to suppress during presentation of the State's case in chief in which appellant attempted successfully to exclude certain items of evidence confiscated from the motel room where appellant and a companion, Bonny Ford, had been arrested. At the conclusion of the hearing, upon defense counsel's express invocation of *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed. 2d 91 (1976), the trial judge cautioned two police witnesses not to "go into" the fact that once he had been arrested and given his "warnings," appellant "refused to make a statement." Immediately following the hearing one of those witnesses, Detective Robert Tart, took the stand. Tart testified that in the course of his investigation on the night of the murder he spoke to appellant and Ford at the door of their motel room and requested that they come down to the police station to make witness statements. After Ford expressed a desire to change clothes before leaving, Tart and another officer sought permission to step into the room, which was permitted. There they saw a bloody pair of jeans on the floor. Since the deceased, Yong Choi, the proprietress of the motel, had been bludgeoned to death with a hammer shortly before, the detectives decided to arrest ap-

pellant and Ford. At this point in the testimony the following occurred:

"Q. At which point what did you do? A. By this time, Bonny had come out of the restroom, we sat her down on the bed next to [appellant], Detective Thomas removes the rights card, reads them their rights, *asks them if they have any statements to make, which there was no response.*" [1]

Counsel for appellant instantly objected, pointing out this answer was in "[d]irect violation of the Court's order." The objection was sustained and, upon appellant's request, the trial court instructed the jury "to disregard the last comment of the witness." Motion for mistrial was denied.

Noting that the "unresponsive portion" of Tart's answer above was "admittedly prejudicial[,]" the court of appeals nevertheless followed "the general rule" that "[w]here prejudicial information is inadvertently placed before a jury, ... an instruction by the trial court to the jury to

disregard such answer will be sufficient to cure any unresponsive answer. *Williams v. State,* 643 S.W.2d 136, 138 (Tex.Crim. App.1982)." 705 S.W.2d at 384. Appellant now contends that as a rule *Doyle* error cannot be cured by instruction to disregard, and that in any event it was not cured in the context of this prosecution. We do not agree with either contention.[2]

## II.

It has long been the general rule and "well settled since the early case of *Miller v. State,* 79 Tex.Cr.R. 9, 185 S.W. 29 [(1916)], that error in admitting improper evidence may be generally corrected by a withdrawal and an instruction to disregard it except in extreme cases where it appears that the evidence is clearly calculated to inflame the minds of the jury and is of such character as to suggest the impossibility of withdrawing the impression produced on their minds." *Harris v. State,* 375 S.W.2d 310 (Tex.Cr.App.1964).[3] In *Gardner v.*

---

1. All emphasis supplied unless otherwise indicated.

2. In his brief on petition for discretionary review appellant also relies on decisions of this Court regarding any use of postarrest silence as a violation of his right under Article I, § 10 of the Texas Constitution and Article 1.05, V.A.C. C.P., not to "be compelled to give evidence against himself." See, e.g., *Sanchez v. State,* 707 S.W.2d 575 (Tex.Cr.App.1986). In his objections before the trial court, however, appellant expressly invoked *Doyle,* supra, which employs a federal due process "fundamental fairness" analysis, and does not rely upon either State or federal constitutional protections against selfincrimination. While a less particularized objection may have "presumptively invoke[d] State law rather than Federal," here the latter was specified. *Samuel v. State,* 688 S.W.2d 492, 495 n. 3 (Tex.Cr.App.1985). At any rate the court of appeals discussed only *Doyle* error, and we limit our consideration accordingly.

3. The language of the exception, attributed to *Miller v. State,* supra, *viz:* that error in admitting improper evidence over objection is incurable when "of such a character as to suggest the impossibility of withdrawing the impression produced on [jurors'] minds," actually had its genesis in the even earlier case of *Hatcher v. State,* 43 Tex.Cr.R. 237, 65 S.W. 97 (1901). Both before and after the decision in *Hatcher,* the Court expressed the exception to the general rule of curability in various terms. E.g., anoth-

er *Miller v. State,* 31 Tex.Cr.R. 609, 21 S.W. 925, at 926–27 (1893) ("... for it may occur that such evidence was of such a prejudicial character as to so influence the jury against the defendant that he would be deprived of a fair and impartial trial."); *Dimry v. State,* 41 Tex.Cr.R. 272, 53 S.W. 853, 854 (1899) (same); *Sweeney v. State,* 65 Tex.Cr.R. 593, 146 S.W. 883, 887 (1912) (same); *Barth v. State,* 39 Tex.Cr.R. 381, 46 S.W. 228, 231 (1898) ("... if, on the contrary, the evidence was of a material character, and was calculated to influence or affect the jury, the withdrawal of the same from their consideration would not heal the vice of its admission."); *McCandless v. State,* 42 Tex.Cr.R. 58, 57 S.W. 672 (1900) (same); *Henard v. State,* 46 Tex.Cr.R. 90, 79 S.W. 810, 811 (1904) (same); *Darnell v. State,* 58 Tex.Cr.R. 585, 126 S.W. 1122, 1126 (same); *Clements v. State,* 61 Tex.Cr.R. 161, 134 S.W. 728, 729 (1911) (same); *Edmondson v. State,* 106 Tex.Cr.R. 321, 292 S.W. 231, 234 (1927) (same); *Music v. State,* 135 Tex.Cr.R. 522, 121 S.W.2d 606, 609–10 (1938) (same); *Deckerd v. State,* 88 Tex.Cr.R. 132, 225 S.W. 166, 167 (1920) (adding that "if doubt is entertained, it should be resolved in favor of the accused."); *Kemper v. State,* 63 Tex.Cr.R. 1, 138 S.W. 1025, 1031 (1911) ("And we here now lay down the rule to be that where testimony has been admitted before the jury which is calculated to injure or prejudice the rights of the defendant, or which is calculated to seriously affect the credibility of the witness for the defendant, or to affect the weight of his testimony, that the court cannot thereafter withdraw said testimony from

*State*, 730 S.W.2d 675, 696 (Tex.Cr.App. 1987), we opined:

"In the vast majority of cases in which argument is made or testimony comes in, deliberately or inadvertently, which has no relevance to any material issue in the case and carries with it some definite potential for prejudice to the accused, this Court has relied upon what amounts to an appellate presumption that an instruction to disregard the evidence will be obeyed by the jury. See 1 R. Ray, Texas Practice, Law of Evidence, § 29 (3rd ed. 1980). *Thompson v. State*, 612 S.W.2d 925 (Tex.Cr.App.1981). In essence this court puts its faith in the jury's ability, upon instruction, consciously to disregard the potential for prejudice, and then consciously to discount the prejudice, if any, in its deliberations."

We also noted that "[w]hether a given case fits the exception or the rule will depend, of course, upon its particular facts." *Id.*

Appellant likens the error in this cause to a direct comment on failure of the accused to testify, a variety of error for which this Court has essentially reversed the presumption and generally found instructions to disregard inefficacious. See *Dickinson v. State*, 685 S.W.2d 320 (Tex.Cr.App.1984); *Owen v. State*, 656 S.W.2d 458 (Tex.Cr. App.1983). Inasmuch as he thereby suggests we hold a witness' comment on the accused's post*Miranda* silence to be incurable error regardless of the particular facts of the case, however, we reject his comparison for two reasons. First, we resist any inclination to expand the class of errors for which an instruction will be deemed ineffective in the general run of cases. Indeed, the reversed presumption that an instruction generally will *not* cure comment on failure of the accused to testify primarily stems from the mandatory language of Article 38.08, V.A.C.C.P., and has been eroded to the point that it applies only to the most blatant examples. Otherwise, the Court has tended to find the instruction to have force. See *Gardner v. State*, supra, at 700, n. 13. Even where we have found such comment beyond cure, the Court has nevertheless held it can constitute harmless error in context of the particular case. *Montoya v. State*, 744 S.W.2d 15 (Tex.Cr. App.1987) (Opinion on appellant's motion for rehearing).[4]

---

the consideration of the jury, and thereby cure the harm of the error committed by the introduction thereof."). In view of what it perceived to be "a contrariety of decisions of this court on the subject of the exclusion of testimony after it has once been improperly admitted[,]" the Court in *Hatcher* observed, *sans* citation to authority, that "the true rule would seem to be that if the admitted testimony is of such a damaging character as to suggest the impossibility of withdrawing the impression produced on the minds of the jury, and thus curing the error, it will be cause for reversal; otherwise, if the testimony is not of that damaging character, and not likely to influence the jury, it can be withdrawn, and the error of its admission thereby cured." 65 S.W. at 98. This particular articulation of the exception has been reiterated in *Miller*, supra, *Latham v. State*, 75 Tex.Cr.R. 575, 172 S.W. 797 (1914), *Hopkins v. State*, 480 S.W.2d 212 (Tex.Cr. App.1972) and a host of other cases since.

**4.** In both *Montoya*, supra, and *Williams v. State*, 643 S.W.2d 136 (Tex.Cr.App.1983), relied on by the court of appeals here, this Court found error that, while not subject to cure by an instruction to disregard, nevertheless could not have contributed to either verdict or punishment, and was therefore harmless beyond a reasonable doubt. Chief Justice Cadena took note of this

seeming paradox in his dissenting opinion in *Waldo*, supra, at 389. See *Gardner v. State*, supra, at 696 n. 12. At least in the context of withdrawal of evidence of post*Miranda* silence, the Fifth Circuit approaches the question from the opposite side. It is true they have declared that *Doyle* violations constitute "plain error," and will thus reach the merits of such a claim even absent an objection in the trial court. *United States v. Harp*, 536 F.2d 601, 602 (CA5 1976); Cf. *United States v. Shaw*, 701 F.2d 367 (CA5 1983). Nevertheless, such violation may prove harmless beyond a reasonable doubt. *Chapman v. United States*, 547 F.2d 1240 (CA5 1977); *Passman v. Blackburn*, 797 F.2d 1335, 1347 (CA5 1986). Rather than decide first the question whether an instruction, if any, was efficacious, the Fifth Circuit cases proceed directly to a harm inquiry, considering the presence *vel non* of an instruction as part and parcel of that analysis. *United States v. Sklaroff*, 552 F.2d 1156, 1162 (CA5 1977); *United States v. Whitaker*, 592 F.2d 826, 830 (CA5 1979); *United States v. Dixon*, 593 F.2d 626, 629–30 (CA5 1979); *United States v. Espinosa–Cerpa*, 630 F.2d 328, 335 (CA5 1980); *United States v. Smith*, 635 F.2d 411, 414 (CA5 1981); *United States v. Ylda*, 643 F.2d 348, 351 (CA5 1981). Only where harm appears manifest has the Fifth Circuit found instructions of no avail. *United States v.*

Nor, secondly, do we find the potential for prejudice from a comment on postMiranda silence to be as great as that which necessarily derives from a prosecutor's deliberate comment on a defendant's failure to testify. The latter comment will seriously taint any case in which the accused invoked his constitutional right to refuse to testify, since invariably it endorses the devastating and practically indelible inference that he had no exculpatory testimony to present in contradiction of the State's evidence. By comparison, at least where, as shall be seen in the instant case, comment on postMiranda silence was not utilized in any overt fashion to impeach appellant's testimony or rebut his defense, we cannot say that the prejudicial impact is so irrevocable that jurors could not obey an instruction to ignore it in their deliberations. In *United States v. Hale*, 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975), decided one year before *Doyle*, supra, the Supreme Court held in the exercise of its supervisory power over the federal courts that postMiranda silence should be excluded as more prejudicial than probative. Along the way the Court noted that "failure to offer an explanation during the custodial interrogation can as easily be taken to indicate reliance on the right to remain silent as to support an inference" detrimental to the accused. 422 U.S. at 177, 95 S.Ct. at 2137, 45 L.Ed.2d at 105. In *Doyle*, supra, the Court hearkened back to *Hale*, supra, in describing such silence as "insolubly ambiguous." 426 U.S. 617, 96 S.Ct. 2244, 49 L.Ed.2d 97. That jurors could readily choose to give an accused's postMiranda silence no detrimental significance whatsoever, as evincing nothing more than an innocent reliance on the right itself, indicates that its potential for prejudice,

though sufficiently outweighing its probative value to render it inadmissible as a matter of federal evidentiary law, is not so great as necessarily to defy curability in every case. That it is "[m]oreover ... fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used" against him, 426 U.S. at 618, 96 S.Ct. at 2245, 49 L.Ed.2d at 98, does not in any respect reduce the amenability of such error to curative instruction.

■ We therefore refuse to embrace a rule that in general *Doyle* error will not be cured by an instruction to disregard. Instead we will honor the presumption that the instruction was efficacious unless consideration of the facts of the particular case "suggest[s] the impossibility of withdrawing the impression produced on the minds of the jury[.]" *Hatcher v. State*, 43 Tex.Cr.R. 237, 65 S.W. 97, 98 (1901).

### III.

Appellant invites us to consider the following factors in determining the efficacy of curative instructions:

1. The nature of the error.
2. The persistence of the prosecution in committing it.
3. The flagrancy of the violation.
4. The particular instruction given.
5. The weight of incriminating evidence.
6. The harm to accused as measured by severity of the sentence.

Without expressly adopting appellant's factors as exhaustive or definitive, we observe that consideration of same does not militate in his favor here. Having already decided that the nature of a *Doyle* violation is not such that an instruction can never cure it,[5] we now examine the remaining factors as they apply to this case.

*Johnson*, 558 F.2d 1225, 1230 (CA5 1977); Cf. *United States v. Stevens*, 538 F.2d 1203 (CA5 1976).

5. Indeed, the State argues that in view of the trial court's instruction to disregard, there was not even error to be cured, relying on the recent Supreme Court opinion in *Greer v. Miller*, 483 U.S. ——, 107 S.Ct. 3102, 97 L.Ed.2d 618 (1987). In *Greer* the prosecutor began his crossexamination of the defendant by asking, "Why didn't you tell this story to anybody when you got

arrested?" An objection was interposed before the question could be answered, an instruction to "ignore the question, for the time being" was given, and motion for mistrial was denied. No further mention was made of Greer's silence. The Supreme Court concluded:

"The fact of Miller's postarrest silence was not submitted to the jury as evidence from which it was allowed to draw any permissible inference, and thus no *Doyle* violation occurred in this case."

### Persistence of the Prosecution—Flagrancy

Appellant points to the fact that Detective Tart's comment followed almost directly on the heels of the trial court's express admonishment not to go into appellant's postarrest silence. He contends, additionally, that the prosecutor compounded the error at a later point in the trial when in crossexamination of appellant she asked, "You did not tell those police officers what happened, did you?" Such reiteration of the error, appellant asserts, cancels the effectiveness of the earlier instruction to disregard. He cites *Boyde v. State*, 513 S.W.2d 588 (Tex.Cr.App.1974).

▮ In the context in which the prosecutor's question was asked, it is clear even on the face of the cold record that it pertained to the time at which appellant and Ford were standing at the door of their motel room. The detectives had not yet stepped into the room and spotted the bloody pair of jeans, and had no reason to suspect as yet that appellant was implicated in the offense. They knew only that appellant and Ford were among others who had been seen earlier that night in the motel office, where the deceased had been killed. Prearrest silence is a constitutionally permissible area of inquiry. *Jenkins v. Anderson*, 447 U.S. 231, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980). No error occurred. Nevertheless, the trial judge sustained appellant's objection and again instructed the jury to disregard. The prosecutor then restated her question, "Standing in the veranda out of your room in a conversation with the detectives, tell me what you told

them?" Appellant voiced no further complaint. In the unlikely event jurors understood the prosecutor's initial question to inquire into appellant's postMiranda silence, her subsequent and more specific question surely disabused them of the notion. In short, we perceive no repetition of the original *Doyle* error. *Boyde v. State*, supra, is inapposite.[6]

As for Tart's violation of the trial court's admonishment, the court of appeals impliedly found it to have been inadvertent. That appears unlikely to us, but even assuming the remark was intentional, it should not here be attributed to the prosecutors, who made no attempt to capitalize on it by inviting inferences harmful to appellant's credibility or defensive posture during final argument. It cannot be said under the circumstances that any action of the State was sufficiently egregious to defeat the presumed efficacy of the trial court's instruction.

### The Particular Instruction

Upon request of defense counsel following the objection to Tart's comment, the trial court simply stated: "Jury is instructed to disregard the last comment of the witness." Appellant now argues that "[a]ssuming the prosecutor's errors here were susceptible to cure by some instruction, the boiler place [sic] instructions actually given were inadequate." "A sharp rebuke in the presence of the jury was certainly called for," he contends.

Appellant quotes this Court's observation in *Dee v. State*, 388 S.W.2d 946, at 947 (Tex.Cr.App.1965) to the effect that:

483 U.S. at ——, 107 S.Ct. at 3108, 97 L.Ed.2d at 630. Here the fact of appellant's failure to make a statement was explicitly brought home to the jury by Tart's answer, albeit not in direct response to the prosecutor's question. Although the distinction may appear metaphysical, we are unprepared to hold that no *Doyle* violation took place in this case, and proceed rather to the inquiry whether the error was obviated by the instruction to disregard.

6. Appellant filed an "Amended Brief" in the court of appeals almost a full year after his original brief was filed. There he raised this second alleged *Doyle* violation for the first time as an additional ground of error. The court of

appeals did not so much as mention this last ground of error in its opinion even though it appears the court had granted leave to file the amended brief. In his second ground for review in his petition to this Court appellant asserts error in the court of appeals' refusal to address the new ground of error brought forward in this way. While we believe that having granted leave to file the amended brief, the better course for the court of appeals would have been to address it on the merits, in view of our observations in the text we now consider appellant's second ground for review to have been improvidently granted. Tex.R.App.Pro., Rule 202(k).

"Impressions made on the mind can no more be erased by such instructions than the memory of a curse or a blessing can be torn out and thrust away by the effort of the will."

That language originally appeared in *McIntosh v. State*, 85 Tex.Cr.R. 417, 213 S.W. 659 (1919), wherein, significantly, the Court continued:

"When prejudicial and persisted in so that same appear not occasional or accidental, and when it further appears from the verdict that the same may have affected the result, the case will be reversed for such misconduct."

213 S.W. at 661, 662. *McIntosh v. State*, supra, involved the repeated interjection by the prosecutor of immaterial but highly prejudicial matters throughout the course of a statutory rape trial. In *Dee v. State*, supra, the prosecutor erroneously placed the defendant's character in issue by inquiring during final argument of a prosecution for driving while intoxicated:

"If the defendant was not intoxicated, why did he not bring in character witnesses who would testify to his reputation as to sobriety?"

388 S.W.2d at 947. Reading beyond the Court's rhetoric in each opinion, it is apparent that neither supports the proposition that the instruction in this case was deficient. Appellant failed to request a sharper "rebuke" before moving for mistrial. Considering appellant's other factors, the instruction that was given here appears adequate.

### Weight of the Evidence

The killing took place at approximately midnight on September 2, 1980, in the office area of the Casa Linda Motel. Earlier in the evening appellant had arrived in San Antonio on the bus and was met at the station by Bonny Ford. They checked into room 217 of the motel and began to inject Preludin in order to enhance sexual relations. Several hours later, just before midnight, Ford was seen at the front door of the office with a coke can in her hand, speaking with the deceased, Choi. Two people bearing descriptions consistent with

appellant and Ford were seen to leave the "[l]inen room adjoining the office" sometime after midnight and proceed toward room 217. At the scene of the murder police found a coke can, and a bottle of beer containing appellant's fingerprints. Two bloody implements, a hammer and a pipewrench, were lying beside the head of deceased. Several items stained with blood of a type consistent with that of the deceased were recovered from room 217, including a small amount of paper money found in appellant's pocket, and the jeans observed by Detective Tart, which belonged to appellant. Appellant had scratches on his hands and back.

Against advice of her own counsel, Ford testified on behalf of appellant. She stated she was a former employee of Choi at the Casa Linda, and had had disagreements over money she allegedly owed her. Choi had confiscated a backgammon set belonging to Ford as collateral on the supposed debt. At about 11:30 p.m. on September 1st, she went down to the office to talk to Choi about returning the backgammon set. Ford testified that she was "pretty wired" and "had done all the speed [she] could tolerate." She was also taking Talwin, a pain killer, and had drunk some beer. In anger Ford kicked a hole in a door within the office. A heated argument ensued, during which Ford knocked Choi to the floor, pinned her there and began to choke her. At this time appellant came into the office and Choi grabbed at him. Ford then hit Choi's head against the floor, and when Choi stopped struggling, thought she had already killed her. Ford continued screaming, and maintained at trial that, "I really was not aware of anything but hurting [Choi] the most I could." When Choi began to stir again, Ford picked up a hammer lying nearby and struck her in the head "[a] bunch of times." Appellant and Ford then dragged the body to another, more concealed part of the office. Ford turned off the lights in the office, and they returned to room 217.

Appellant's version of events differed somewhat. He testified he entered the office looking for Ford, only to be attacked inexplicably by Choi. As they struggled,

Ford struck Choi from behind appellant with the hammer five or six times. Appellant and Ford then moved the body. Appellant found some linens and began wiping blood and fingerprints off of the hammer and the wrench as Ford turned out the lights. The two then exited through the laundry room.

It is uncontested that appellant was at the scene of the killing and that he participated in attempts to conceal it. During final argument the State maintained his participation was greater, judging from the unexplained existence of the wrench, the amount of blood on appellant's clothes, the scratches on his body and the inconsistencies between his story and Ford's. In an attempt to impugn appellant's credibility the prosecutor made one allusion to the fact appellant "lied to the cops, he lied to everybody and he's lying to you. He was involved." This can easily be construed as a reference to appellant's prearrest contact with police, which was admitted in evidence without objection. Appellant did not object to the argument. The prosecutor urged the jury to find appellant guilty either as a primary actor or as a party to the offense committed by Ford. During its deliberations the jury sent out a note requesting clarification on the law of parties, asking, "Do you *aid* the crime by not preventing the crime[?]" [7] The trial court simply referred the jury back to its original instruction. Subsequently the jury requested to see appellant's complete testimony, which was denied.

That appellant refused to make a statement at the time of the arrest does not appear to us to have been so detrimental to his defensive posture as to suggest the impossibility of removing it from the jurors' minds. Under the circumstances as appellant adduced them in his evidence, it is not implausible he would have chosen to exercise his right to silence rather than incriminate Ford, his sometime girlfriend, as the sole perpetrator of a heinous crime.

Silence in this context is not particularly compelling evidence of appellant's involvement in "aiding" commission of the offense. Thus, though certainly the State failed to present an overwhelming case, the *Doyle* error in issue here was not of such "a material character, ... calculated to influence or affect the jury adversely to defendant [that] the withdrawal of same will not cure the error." *Edmondson v. State*, 106 Tex.Cr.R. 321, 292 S.W. 231, 234 (1927).

### *Severity of Punishment*

Appellant received the maximum sentence of 99 years imprisonment from the jury. He now claims this demonstrates "that the jury was unable to put aside [his] post-arrest silence." All of the cases appellant relies upon involve the efficacy of curative instructions to remedy admission of extraneous instances of misconduct bearing no relevance to any material issue in the prosecution.[8] Here, three police officers testified appellant's reputation for being peaceable and lawabiding was bad. Considering also the nature of the offense committed, we are unable to attribute the punishment assessed by the jury in any measure to detective Tart's brief and unembellished remark.

We therefore conclude the trial court did not err in failing to grant appellant's motion for mistrial following the *Doyle* error that occurred in this case.

Accordingly, the judgment of the court of appeals is affirmed.

ONION, P.J., and TEAGUE, J., concur.

WHITE, J., not participating.

7. Emphasis in original.

8. E.g., *Walker v. State*, 610 S.W.2d 481 (Tex.Cr. App.1980); *Baldwin v. State*, 499 S.W.2d 7 (Tex. Cr.App.1973); *Brown v. State*, 168 Tex.Cr.R. 67, 323 S.W.2d 954 (1959); *Palmer v. State*, 157 Tex.Cr.R. 96, 246 S.W.2d 893 (1952); *Hollingsworth v. State*, 122 Tex.Cr.R. 545, 56 S.W.2d 869 (1933).