

# Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

MARK ANTHONY CORTEZ, Appellant

No. 05-97-00477-CR       V.

THE STATE OF TEXAS, Appellee

Appeal from the 282nd Judicial District Court of Dallas County, Texas. (Tr.Ct.No. F94-19652-IS).
Opinion delivered by Justice Morris, Justices Ovard and Bridges participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered October 2, 1998.


JOSEPH B. MORRIS
JUSTICE

Affirmed and Opinion Filed October 2, 1998



In The
# Court of Appeals
## Fifth District of Texas at Dallas

---

No. 05-97-00477-CR

---

## MARK ANTHONY CORTEZ, Appellant

## V.

## THE STATE OF TEXAS, Appellee

---

**On Appeal from the 282nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F94-19652-IS**

---

# OPINION

Before Justices Ovard, Morris, and Bridges
Opinion By Justice Morris

After a jury trial, Mark Anthony Cortez appeals his conviction for the murder of Abelino Servin, Jr. In two points of error, he contends the trial court erroneously admitted evidence obtained from the illegal arrest of his friend, and he challenges the denial of a motion for mistrial made after a State's witness commented on his failure to cooperate with police after arrest. We affirm the trial court's judgment.

## FACTUAL BACKGROUND

Appellant and the victim, Abelino Servin, Jr., spent an evening at a pool hall drinking and playing pool with appellant's best friend, Raul Garcia, and appellant's girlfriend. At some point in the evening, appellant's girlfriend had an argument with Servin. At closing time, they had another argument. The foursome left the pool hall and drove to appellant's girlfriend's house, where appellant had a private conversation with his girlfriend. Afterwards, the three men left in appellant's car. Garcia passed out in the backseat, and Servin rode in the front seat with appellant, who drove.

Garcia "sobered up" at the sound of a gunshot. Garcia testified that appellant had parked the car in an isolated industrial area and retrieved a shotgun from the trunk. He testified that appellant shot Servin once in the head and once in the stomach at close range. Garcia remembered seeing Servin's hat fly up in the air with the second shot. When appellant returned to the car, he told Garcia that Servin "deserved it." The men then drove around for about thirty minutes before returning to the murder scene, where appellant asked Garcia to help him locate the shotgun shells. Garcia found one shell. Appellant found a medicine bottle that he had apparently dropped during the murder.

Appellant and Garcia spent the remainder of the morning at appellant's girlfriend's house. Later that day, they drove to Garcia's brother's house. Appellant sold the shotgun to Garcia's brother for a hundred dollars.

The day after the murder, police investigators obtained an affidavit from appellant. The following day, they obtained an affidavit from Garcia. The police compared the

-2-

affidavits and then asked both men to come to the police station to update their statements. After some discussion and questioning, both men were eventually arrested on December 13, 1994. During questioning after arrest, Garcia informed police that his brother had the murder weapon.

After arrest, appellant called Garcia's brother and told him to get rid of the shotgun. Thereafter, Garcia's brother called police and told them he thought he was in possession of the gun that was used to murder Servin. Police obtained the gun from Garcia's brother.

## DISCUSSION

The trial court concluded that the arrest warrants used to arrest appellant and Garcia lacked probable cause and ruled that anything seized from appellant after arrest would be inadmissible. Appellant also urged, unsuccessfully, that evidence obtained as a result of Garcia's illegal arrest—specifically the shotgun and expert testimony connecting the shotgun with a shell found near the body—should be suppressed under article 38.23 of the code of criminal procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 38.23 (Vernon 1979 & Supp. 1998) (prohibiting the admission against accused of illegally obtained evidence). The trial court ruled that appellant did not have standing to demand redress for any violation of Garcia's constitutional rights. Appellant challenges this ruling in his first point of error.

The issue is controlled by the court of criminal appeals' opinion in *Fuller v. State*, 829 S.W.2d 191, 201-02 (Tex. Crim. App. 1992), *cert. denied*, 508 U.S. 941 (1993). The *Fuller* opinion reaffirmed the rule that the right to complain of an illegal arrest or seizure is a privilege personal to the wronged party. *See id.* Appellant urges, without a legal rationale,

-3-

that we should distinguish *Fuller* because the standing rule is illogical, unfair, and makes no sense. We are unpersuaded. Concluding the trial court correctly ruled under *Fuller* that appellant had no standing to seek the exclusion of evidence obtained as a result of Garcia's illegal arrest, we overrule appellant's first point of error.

In his second point of error, appellant complains the trial court erroneously overruled his motion for mistrial after the prosecutor elicited testimony that appellant failed to cooperate with police after his arrest. The facts before us show that the prosecutor, in concluding his direct examination of the police investigator, asked the witness if anything else happened on the day Garcia and appellant were arrested. The investigator testified that he asked Garcia and appellant if they would like to cooperate with the police investigation. The officer said that Garcia indicated he would cooperate, but that appellant replied he "had nothing to say." Defense counsel's objection interrupted the officer's testimony. After a recess, the trial judge instructed the jury not to consider anything it may have heard about what appellant said after arrest. Appellant argues the instruction did not cure the error caused by the witness's reference to his assertion of the right of post-arrest silence.

The State initially asserts that the testimony was not a comment on appellant's post-arrest silence, but merely a continuation of appellant's repeated oral statements, made prior to arrest, that he "had nothing to say." Assuming for purposes of our analysis that error occurred, we conclude the trial court's instruction cured it.

Harm flowing from a comment on the accused's post-arrest silence can be cured by an effective instruction to disregard, unless the pertinent facts suggest the impossibility of

-4-

withdrawing the impression produced on the jurors' minds. *See Waldo v. State*, 746 S.W.2d 750, 754 (Tex. Crim. App. 1988). In making the determination of whether an instruction cured the error, we are guided by the following factors: the persistence of the State, the flagrancy of the comment, the particular instruction, the weight of the evidence, and the severity of the punishment. *Fletcher v. State*, 852 S.W.2d 271, 275 (Tex. App.--Dallas 1993, pet. ref'd).

Of these five factors only one, the severity of the punishment, weighs in favor of reversal. Otherwise, the prosecutor's question did not intentionally elicit the information that appellant refused to cooperate; rather, it was a general question to conclude the direct testimony and give the officer a chance to add any details the prosecutor might not have elicited by his other direct questions. The question was asked once and was not repeated. The testimony was not flagrant but, as indicated, was descriptive of the oral statements the witness said appellant made just prior to his arrest.

Furthermore, defense counsel interrupted the witness and, it appears, may have been speaking over the witness such that the content of the testimony might not have been obvious to the jury. Moreover, the trial court's instruction was as clear and assertive as it could be, explicitly instructing the jury not to consider evidence of what appellant may have said after arrest. Finally, the evidence of guilt in this case weighs heavily against appellant. His childhood friend and eyewitness, Garcia, testified for the State. Garcia's testimony was corroborated by Garcia's brother, a friend of Garcia's brother, and expert forensic testimony. Appellant's only witness was his girlfriend, whose testimony was not highly probative

on the issue of guilt. She merely contradicted Garcia's testimony regarding some of the actions of Garcia and appellant before and after the murder. She, in fact, corroborated much of Garcia's testimony concerning events leading up to the murder, including the alleged motive. Appellant did not put on any other evidence; his sole defense theory was that Garcia was the real killer. Given these circumstances and the efficacy of the trial court's instruction, we conclude that the combined facts do not suggest the impossibility of withdrawing the impression produced on the jurors' minds, even assuming they heard the witness's statement.

In fact, the question and answer complained of in this case are very similar those in *Waldo*, where the court held that the instruction to disregard was sufficient to cure error. *See Waldo*, 746 S.W.2d at 752 (to prosecutor's question, "At which point, what did you do," witness responded that officer asked the accused if he had any statements to make, "to which there was no response"). For all the foregoing reasons, we overrule appellant's second point of error.

We affirm the trial court's judgment.

JOSEPH B. MORRIS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47
970477F.U05

-6-