# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

### NO. 03-10-00353-CR

**Robert Allen Cooper, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF COMAL COUNTY, 207TH JUDICIAL DISTRICT
### NO. CR2008-531, HONORABLE DIB WALDRIP, JUDGE PRESIDING

### M E M O R A N D U M   O P I N I O N

A jury found Robert Allen Cooper guilty of assault causing bodily injury to a family or household member enhanced with a prior conviction for family-violence assault and assessed punishment at twenty years' imprisonment. *See* Tex. Penal Code Ann. § 22.01 (West Supp. 2010). In a single issue on appeal, Cooper contends that the State improperly bolstered the testifying victim's credibility by revealing that she had never been convicted of a felony or misdemeanor. He further argues that the jury instruction to disregard the information did not effectively cure the error. Because we hold that the jury instruction properly cured any error, we affirm the trial court's judgment of conviction.

### BACKGROUND

On the evening of July 18, 2008, Cooper and Amanda Mignard, Cooper's girlfriend, were returning to Cooper's home after dinner at a New Braunfels restaurant when Mignard received

a text message from a female friend containing an image of a man's digitally-enhanced genitals.[1]

Mignard showed Cooper the image, saying, "Isn't this funny?" According to Mignard, the text message upset Cooper, who responded by "completely shut[ting] down" and saying, "I don't want to see that crap." Cooper retreated to the bedroom as soon as they arrived home, and Mignard crawled onto the bed with him and told him that she was sorry and that she loved him. After Mignard's second apology, Cooper "jumped up" and said, "You're not f'g sorry. I'll make you sorry."

Mignard tried to leave, but Cooper grabbed her purse, keys, and phone out of her hands. He also blocked the sliding glass door with a piece of wood and said, "You're not f'g leaving." Cooper pushed Mignard back into the bedroom, where he held her by her arms while she repeatedly asked Cooper to let her go. Mignard attempted to knee Cooper in the groin, but Cooper blocked her. He then reiterated that she was "not f'ing leaving" and stated, "I will make you sorry. As much as you hurt me, I will hurt you." Mignard continued to tell Cooper that she was sorry and that she loved him. Cooper responded over and over, "You're not leaving, I will make you hurt as much as you have just hurt me."

Cooper then grabbed Mignard by the hair, placing his hands above her ears and close to her scalp. While holding her hair, Cooper threw Mignard face-down onto the bed. He then grabbed the hair on the back of her head with both hands and "started throwing [her] around the bed like a rag doll." Cooper began pulling Mignard from the top of the bed to the floor and back up to the bed in quick succession. Mignard estimated that Cooper pulled her on and off the bed more than ten times. She testified that Cooper pulled several handfuls of hair out of her head and that at one

---

[1] The facts recited herein are taken from the testimony and exhibits admitted at trial.

point, Cooper held two fistfuls of her hair, stared blankly into her eyes, and said, "Look what you made me do to you." Mignard testified that she did not do anything to provoke Cooper's attack, which lasted from approximately 11 p.m. to 4:30 or 5 a.m.

After Cooper ceased the assault, he and Mignard had sex. Mignard testified that she was afraid that if she refused, he would continue hurting her. Soon after, they both went to sleep and woke to Cooper's co-worker knocking on the door to pick Cooper up for work. After Cooper left, Mignard called her cousin, who accompanied her to the hospital, where Mignard was treated for a concussion. Mignard testified that her eyes, forehead, nose, cheeks, and neck were bruised, swollen, and cut.[2]

Cooper was indicted for assault causing bodily injury to a family or household member enhanced with a prior conviction for family-violence assault. At his jury trial, Cooper admitted that he grabbed Mignard by the hair, but claimed that he acted in self-defense after she attempted to bite him. He testified that upon returning home from dinner, he immediately got into bed, where Mignard "kept shoving" the text-message image into his face. He sat up and told her to "shut the 'F' up" because he wanted to sleep. He testified that Mignard then tried to bite him, so he grabbed her hair and the two wrestled around on the bed, at one point falling off completely. Cooper testified that he only pulled Mignard's hair twice, but that he did pull hair out of her head.[3] Cooper also claimed that he never blocked the door or kept Mignard from leaving. On cross-examination,

---

[2] In addition to Mignard's testimony, the State presented photographs taken by Mignard and the responding police officer documenting her injuries.

[3] On cross-examination, Cooper also admitted to pulling hair out of an ex-girlfriend's head during a previous family-violence assault.

3

Mignard admitted to biting Cooper in the chest and finger approximately two weeks prior to the hair-pulling incident, but testified that she bit him because Cooper had her in a headlock and would not let go. Mignard also admitted to having had "rough sex" with Cooper on prior occasions, but testified that the July 18 incident was not rough sex. Cooper presented additional evidence that Mignard and Cooper continued communicating with each other via phone and text message from the day after the assault until Cooper was arrested.

At Cooper's trial, during the State's fourth re-direct examination of Mignard, the prosecutor asked, "Have you ever been convicted of a felony? . . . Or a misdemeanor?" Mignard answered "no" to each. Defense counsel objected to the questions, stating that they were improper because Mignard's reputation had not yet been attacked. The trial court sustained defense counsel's objection and issued an instruction to the jury that it disregard Mignard's answers. Defense counsel then moved for a mistrial, which the trial court denied.

The jury found Cooper guilty of assault causing bodily injury to a family or household member enhanced with a prior conviction for family-violence assault and assessed a sentence of twenty years' imprisonment. Cooper, in his sole issue on appeal, argues that the State improperly bolstered Mignard's credibility by revealing that she had never been convicted of a felony or misdemeanor and that the trial court erred in denying his motion for mistrial because the jury instruction to disregard the information did not effectively cure the error.

**STANDARD OF REVIEW**

A trial court's decision to deny a motion for mistrial is subject to review based upon an abuse-of-discretion standard. *See Wead v. State*, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004).

4

We view the evidence in the light most favorable to the trial court's ruling and uphold the ruling if it is within the zone of reasonable disagreement. *Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007). Additionally, we must review the trial court's ruling in light of the arguments that were before the trial court at the time it ruled. *See* Tex. R. App. P. 33.1; *Wead*, 129 S.W.3d at 129. A trial court abuses its discretion only when no reasonable view of the record supports the trial court's ruling or when the trial court acts in an arbitrary manner without reference to any guiding rules or principles. *Webb*, 232 S.W.3d at 112.

## DISCUSSION

In his only point on appeal, Cooper argues that the State improperly bolstered Mignard's credibility because it presented evidence that she had never been convicted of a felony or misdemeanor when her credibility had not yet been attacked. He further argues that although the trial court sustained his objection and issued an instruction to the jury to disregard the information, this instruction did not cure the error and the trial court erred in denying him a mistrial.

The State first claims that Cooper waived his right to appeal because during trial, he objected that Mignard's *reputation* had not been attacked, whereas his appellate brief argues that the State's action was improper because Mignard's *credibility* had not been attacked. We conclude that Cooper adequately preserved the issue for appeal because both his trial objection and his brief on appeal sufficiently communicated his contention that the State's questioning constituted improper bolstering because Mignard's character had not yet been attacked. *See* Tex. R. App. P. 33.1(a)(1)(A) (to preserve error on appeal, party must object with sufficient specificity to make trial court aware of complaint).

5

To determine whether a given error necessitates a mistrial, we must decide whether, under the particular facts of the case, the improper evidence is clearly calculated to inflame the minds of the jury and is of such a character as to suggest the impossibility of withdrawing the impression produced on the minds of the jurors. *Id*.; *Wood v. State*, 18 S.W.3d 642, 648 (Tex. Crim. App. 2000). Mistrial is appropriate for only "highly prejudicial and incurable errors." *Wood*, 18 S.W.3d at 648.

The asking of an improper question, by itself, seldom warrants a mistrial. *Wood*, 18 S.W.3d at 648. Furthermore, an instruction specifically informing the jury to disregard the prosecutor's last question or comment is generally adequate to cure any resulting prejudice. *See, e.g.*, *Simpson*, 119 S.W.3d at 274 (holding instruction to disregard effectively cured prosecutor's improper question regarding victim's family's wishes for defendant's sentence); *Dinkins v. State*, 894 S.W.2d 330, 356 (Tex. Crim. App. 1995) (holding instruction to disregard effective to cure error when prosecutor improperly commented on defendant's post-arrest silence); *Waldo v. State*, 746 S.W.2d 750, 754 (Tex. Crim. App. 1988) (same); *Johnson v. State*, 83 S.W.3d 229, 232 (Tex. App.—Waco 2002, pet ref'd); *Mendoza v. State*, 959 S.W.2d 321, 324 (Tex. App.—Waco 1997, pet. ref'd) (holding that instruction to jury to "not consider the last statement made by the State's attorney for any purpose whatsoever" was adequate to cure error).

Here, the potential error stemmed from two questions from the prosecutor: "Have you ever been convicted of a felony? . . . Or a misdemeanor?" Mignard answered "no" to each. The trial judge sustained the defense counsel's objection, and gave the jury an instruction to disregard Mignard's answers. The judge then denied defense counsel's motion for mistrial. Not only did the

prosecutor only mention Mignard's criminal history once, making this an isolated incident, the trial court immediately issued an instruction to disregard. In the absence of evidence to the contrary, we must assume that the jury followed the trial court's instructions and disregarded the objectionable testimony. *See Miles v. State*, 204 S.W.3d 822, 827-28 (Tex. Crim. App. 2006) (citing *Colburn v. State*, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998)); *Waldo*, 746 S.W.2d at 750 (applying presumption that jury followed instruction to disregard evidence).

Additionally, the strength of the evidence against Cooper suggests that it is unlikely that the jury chose to believe Mignard's testimony merely because she did not have a criminal record. Several elements other than the fact that Mignard had never been convicted of a felony or misdemeanor supported the jury's guilty verdict. Cooper's testimony concerning the events of the evening did not align with Mignard's injuries. Cooper claimed that he only pulled her hair twice, while photographs showed that Mignard was missing a substantial amount of hair from the area around her hairline on the front, back, and sides of her head. Mignard also testified, and photographs confirmed, that her eyes, forehead, nose, cheeks, and neck were bruised, swollen, and cut. She was diagnosed with a concussion, and later, a neck sprain, as a result of the incident. In addition, the responding sherriff's deputy, Homero Balderas, corroborated Mignard's testimony, stating that when he met her, she had been crying and appeared scared, tired, and distressed. The State also produced Mignard's written police report of the incident, which was consistent with her testimony at trial. Taking this evidence into account, a jury could have chosen to believe Mignard's account of the events for reasons other than Mignard's lack of a criminal record.

Given the trial court's instruction to disregard and the fact that the remaining evidence strongly supports the jury's guilty verdict, we cannot conclude that the objected-to evidence was of such a character as to inflame the minds of the jury or suggest the impossibility of withdrawing the impression produced on the minds of the jurors. We therefore hold that the trial court did not abuse its discretion in denying Cooper's motion for mistrial, and affirm the trial court's judgment of conviction.

## CONCLUSION

Because the trial court did not err in denying Cooper's motion for mistrial, we affirm the trial court's judgment of conviction.

_____

Diane M. Henson, Justice

Before Chief Justice Jones, Justices Henson and Goodwin

Affirmed

Filed:   February 25, 2011

Do Not Publish