**AFFIRMED and Opinion Filed February 27, 2023**



**In the**

**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-21-01133-CR**

**KELLY WAYNE MONK, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 2**
**Dallas County, Texas**
**Trial Court Cause No. F21-75295-I**

# MEMORANDUM OPINION

Before Justices Molberg, Partida-Kipness, and Carlyle
Opinion by Justice Carlyle

A jury convicted Kelly Wayne Monk of aggravated robbery, enhanced by two prior felony convictions, and assessed punishment at thirty-five years' imprisonment. Mr. Monk appeals, and we affirm in this memorandum opinion. *See* TEX. R. APP. P. 47.4.

When Anita Jendrey answered a knock on her door in March 2020, a man shoved a gun in her face and demanded money. Ms. Jendrey testified she told the man she had no money, so he forced her into a chair and beat her with his gun and a bamboo stick. The man then searched her house, drank from one of her water bottles,

and stole several items including a phone, a television, and a stereo. After the attacker left, Ms. Jendrey sought help from her neighbors who called 911. One neighbor testified Ms. Jendrey was "covered in blood," and it "looked like somebody used her as a punching bag." When asked at trial whether she saw her attacker in the courtroom, Ms. Jendrey could not identify Mr. Monk.

Detective John Lumbley testified that police identified Mr. Monk as the suspect after his fingerprint matched a print they lifted from a bamboo stick found at the scene, which was consistent with Ms. Jendrey's description of the instrument the attacker used to strike her. They then obtained Mr. Monk's photograph and noted his appearance matched the detailed description Ms. Jendrey provided shortly after the attack. And based on that evidence, they obtained a search warrant to acquire Mr. Monk's DNA, which matched a sample taken from a water bottle found at the crime scene. Forensic experts testified at the trial to confirm the match between Mr. Monk and the fingerprint and DNA evidence police collected.

## THE STATE'S COMMENT ON MR. MONK'S INVOCATION OF HIS FIFTH AMENDMENT RIGHTS WAS HARMLESS ERROR

When police obtained Mr. Monk's DNA sample, they gave him his *Miranda*[1] warnings and sought to question him about the robbery. At trial, the State asked Detective Lumbley whether Mr. Monk elected to speak with him after receiving those warnings, and Detective Lumbley testified that Mr. Monk declined. Mr.

---

[1] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

Monk's counsel objected to that exchange on grounds that it improperly commented on Mr. Monk invoking his Fifth Amendment rights,[2] but the trial court overruled his objections.

Commenting on a defendant's decision to invoke his right to remain silent after receiving *Miranda* warnings violates due process and infringes on the right against self-incrimination. *See Wainwright v. Greenfield*, 474 U.S. 284, 295 (1986); *Dinkins v. State*, 894 S.W.2d 330, 356 (Tex. Crim. App. 1995). Thus, we agree with Mr. Monk that the State's exchange with Detective Lumbley was an "error of constitutional magnitude." *Snowden v. State*, 353 S.W.3d 815, 818 (Tex. Crim. App. 2011).

The State nevertheless contends that the trial court cured any potential error by including the following instruction in its charge to the jury:

> Our law provides that a defendant may testify in his own behalf if he elects to do so. This, however, is a right accorded a defendant, and in the event he elects not to testify, that fact cannot be taken as a circumstance against him.

> In this case, the defendant has elected not to testify and you are instructed that you cannot and must not refer to or allude to that fact throughout your deliberations or take it into consideration for any purpose whatsoever as a circumstance against him.

---

[2] To the extent Mr. Monk contends on appeal that the exchange also violated his rights under article I, section 10 of the Texas Constitution, he did not preserve that issue by raising a timely objection in the trial court. *See* TEX. R. APP. P. 33.1(a)(1); *Heidelberg v. State*, 144 S.W.3d 535, 537 (Tex. Crim. App. 2004). But even if he had preserved the issue, it would not change the result in this case.

Although a trial court may cure this type of error by promptly instructing the jury to disregard the offending comment, the trial court did not do so here. *See Dinkins*, 894 S.W.2d at 356 (error associated with one comment cured where trial court sustained objection and promptly instructed jury to disregard, but error associated with other comment not cured where trial court overruled objection).

Moreover, the trial court's charge instruction addressed only Mr. Monk's right not to testify at trial; it did not mention his right to remain silent during custodial interrogation. Thus, even if we assume that a trial court can cure constitutional error of this variety by giving a charge instruction, the instruction here would not suffice.

That said, an uncured constitutional error does not invariably require reversal. *Snowden*, 353 S.W.3d at 818. Rather, we must analyze the error for harm under rule 44.2(a) and reverse unless convinced beyond a reasonable doubt that the error did not contribute to the defendant's conviction or punishment. *See* TEX. R. APP. P. 44.2(a); *Snowden*, 353 S.W.3d at 818. Our inquiry is thus whether "there was a reasonable possibility that the error . . . moved the jury from a state of nonpersuasion to one of persuasion" on the relevant issue. *Wesbrook v. State*, 29 S.W.3d 103, 119 (Tex. Crim. App. 2000). To answer this question, we consider several non-exclusive factors including the error's nature, whether the State emphasized the error, the error's probable implications, the weight the jury would likely give the error in its deliberations, and the presence of "overwhelming evidence." *Snowden*, 353 S.W.3d at 818.

Applying these factors here, we note that the State did not emphasize or make additional use of the comment on Mr. Monk's post-*Miranda* silence. And the error's probable implications are ambiguous—"jurors could readily choose to give an accused's post-*Miranda* silence no detrimental significance whatsoever, as evincing nothing more than an innocent reliance on the right itself." *Waldo v. State*, 746 S.W.2d 750, 754 (Tex. Crim. App. 1988).

Moreover, the jury likely would place little weight on the comment in comparison with the overwhelming evidence of Mr. Monk's guilt. His fingerprint was on the bamboo stick the robber apparently used to beat Ms. Jendrey, and his DNA was on a water bottle the attacker drank from at the scene. Despite the elderly Ms. Jendrey's inability to identify Mr. Monk at the trial, there is no reasonable possibility that Detective Lumbley's comment on Mr. Monk's post-*Miranda* silence "moved the jury from a state of nonpersuasion to one of persuasion" as to whether Mr. Monk was the attacker. *See Wesbrook*, 29 S.W.3d at 119. We are convinced beyond a reasonable doubt that the error did not affect Mr. Monk's conviction or punishment. *See* TEX. R. APP. P. 44.2(a).

### THE TRIAL COURT DID NOT ABUSE ITS DISCRETION BY DENYING MR. MONK'S MOTION FOR DIRECTED VERDICT

Mr. Monk next argues that the trial court erred by overruling his motion for a directed verdict. We treat this as a challenge to the sufficiency of the evidence,[3]

---

[3] *See Madden v. State*, 799 S.W.2d 683, 686 (Tex. Crim. App. 1990).

which we review under the familiar *Jackson v. Virginia*[4] standard, viewing all evidence in the light most favorable to the verdict to determine whether the factfinder could rationally find guilt beyond a reasonable doubt. *See Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013).

A person commits robbery if, "in the course of committing theft and with intent to obtain or maintain control of the property," he: "(1) intentionally, knowingly, or recklessly causes bodily injury to another; or (2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death." TEX. PENAL CODE § 29.02(a). A person commits aggravated robbery if he commits robbery and: "(1) causes serious bodily injury to another; (2) uses or exhibits a deadly weapon; or (3) causes bodily injury to another person or threatens or places another person in fear of imminent bodily injury or death, if the person is" either disabled or "65 years of age or older." *Id.* § 29.03(a).

As noted above, both fingerprint and DNA evidence established Mr. Monk's identity as Ms. Jendrey's attacker. And having reviewed the record, we are not persuaded by Mr. Monk's arguments seeking to minimize the force of that evidence. In addition, Ms. Jendrey, who was more than 65-years old when the attack occurred, testified that the attacker shoved a gun in her face, demanded money, used both the gun and a bamboo stick to beat her, and stole several items from her house. Ms.

---

[4] 443 U.S. 307 (1979).

Jendrey's neighbor testified that she was "covered in blood" after the attack, that her face was "bruised up," and that it "looked like somebody used her as a punching bag." The record also includes police photographs documenting Ms. Jendrey's injuries. This evidence amply supports the jury's conclusion that Mr. Monk committed aggravated robbery.

*      *      *

We affirm the trial court's judgment.

/Cory L. Carlyle/
_____
CORY L. CARLYLE
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
211133F.U05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

KELLY WAYNE MONK, Appellant

No. 05-21-01133-CR   V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 2, Dallas County, Texas
Trial Court Cause No. F21-75295-I.
Opinion delivered by Justice Carlyle. Justices Molberg and Partida-Kipness participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered February 27, 2023