COURT OF 
APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-03-148-CR
 
 
STEPHEN STEPHON WILLIAMS                                               APPELLANT
 
V.
 
THE STATE OF TEXAS                                                                  STATE
 
 
------------
 
FROM THE 89TH DISTRICT COURT OF WICHITA 
COUNTY
 
------------
 
MEMORANDUM OPINION[1]
 
------------
        Appellant 
was convicted by a jury of two counts of aggravated robbery, and the jury, 
having found the enhancement allegations true, assessed his punishment on each 
count at sixty-five years’ confinement in the Institutional Division of the 
Texas Department of Criminal Justice and a $10,000 fine.  The trial court 
sentenced him accordingly.  Appellant brings nine issues on appeal, 
complaining that the evidence is legally and factually insufficient; that the 
trial court abused its discretion by failing to grant a mistrial when an 
extraneous offense was improperly admitted before the jury and by allowing a 
police officer to testify that a complainant had identified Appellant as one of 
the robbers; and that he had received ineffective assistance of counsel at 
trial.  Because we hold that the evidence is legally and factually 
sufficient to support Appellant’s conviction, that the trial court properly 
admitted the contested evidence, and that Appellant failed to prove his claims 
of ineffective assistance, we affirm the trial court’s judgment.
Sufficiency of 
the Evidence
        In 
his first issue, Appellant contends that the evidence is legally insufficient to 
support his conviction.  In his second issue, he contends that the evidence 
is factually insufficient to support his conviction.
        The 
evidence shows that the complainants, a married couple in their fifties, had won 
a large sum of money in Las Vegas about two weeks before the robbery.  On a 
Tuesday morning in February 2002, the complainants were at home.  The man 
was asleep.  The woman, expecting her daughter, answered a knock at the 
door.  Two men came in with a gun.  The shorter one had a gun, and a 
stocking masked his face.  He threw the woman on the floor, held his knee 
on her back, and held the gun to her head.  She could feel that he was 
wearing a sweater.  The taller robber, dressed in a dark shirt and dark 
pants of some kind, had a toboggan and a handkerchief around his face.  The 
men demanded money from the woman, and, after her husband woke up, from him.  
The robber holding the woman down made her take off her wedding ring.  The 
other robber took necklaces from her husband.  The robber holding the woman 
down threatened to kill her.  After the men got the jewelry, they went out 
the front door and ran down Avenue F towards Monroe.  The female 
complainant then got up and called 911.  She was bruised on her face and 
under her arms after the encounter.  On the night before the robbery, 
Appellant, whom the complainant knew as Dizzy, was at the complainants’ home.
        Officer 
Schulte heard the dispatch regarding the offense at about 11:28 a.m.  The 
only description he remembers receiving was “two black males wearing dark 
clothing.”  Within minutes of the robbery, he observed from his unmarked 
car in the multiethnic neighborhood, somewhere between two and more than a few 
blocks away from the crime scene, two black males wearing dark 
clothing—Appellant and a companion.  Schulte saw that Appellant and a 
companion “were walking very quickly,” staying on the grassy part of the 
road, and “looking back over their shoulder[s] as if they thought somebody was 
following them or looking for them.”  Schulte detained Appellant and his 
companion outside a home.  There was testimony that the crime scene and the 
scene of arrest were within running or walking distance of each other.  
Schulte had Appellant sit on the steps outside the home.  A wedding ring 
was found on the steps after Appellant stood up.  Another officer saw 
Appellant drop the ring on to the steps from his left hand.  Appellant was 
wearing a blue sweater.  A search of his person revealed that he was 
carrying a crack pipe.  The other man, who was wearing a blue, heavier 
flannel shirt and coveralls, had a gray cap, a blue bandana, a gun, and two 
necklaces, one of which was missing part of its chain.  After being called 
by the police, the female complainant arrived at the scene of arrest and 
identified the ring and necklaces, providing the missing piece of chain from the 
broken necklace.  At trial, the female complainant could not identify 
either robber.  The male complainant did not testify.
        Based 
on the applicable standards of review,[2] we hold that 
the evidence is legally and factually sufficient to support Appellant’s 
conviction.  We overrule his first two issues.
Evidentiary 
Rulings
        In 
his third issue, Appellant contends that the trial court abused its discretion 
in refusing to grant a motion for mistrial after the female complainant 
testified that Appellant had been at her house on the night before the robbery 
trying to sell stolen merchandise.  Generally, the admission of improper 
evidence may be cured by a withdrawal of the evidence and an instruction to 
disregard.[3]  The effectiveness of curative 
instructions is determined on a case-by-case basis.[4]  
However, we must presume that the jury followed the trial court's instructions, 
absent any indicia to the contrary.[5]  A 
mistrial is only required when the impropriety is clearly calculated to inflame 
the minds of the jury and is of such a character as to suggest the impossibility 
of withdrawing the impression produced on the minds of the jury.[6]  We review a trial court's denial of a motion for 
mistrial under an abuse of discretion standard.[7]
        Appellant’s 
trial counsel objected after the female complainant testified about the 
extraneous offense.  In the bench conference immediately following her 
testimony, Appellant’s trial counsel stated that he had had no notice about 
the extraneous, unadjudicated offense.  The prosecutor responded that she 
had not heard the information before, either.  The trial court excused the 
jury for the remainder of the discussion.
        In 
arguing to the trial court that an instruction to disregard would not cure the 
harm, Appellant’s trial counsel stated that he understood that the State had 
not intentionally put on the testimony.  After the trial judge stated that 
he was not going to grant a mistrial but would issue an instruction to disregard 
the evidence about the stolen merchandise (but not the evidence concerning 
Appellant’s presence at the complainants’ home), Appellant’s trial counsel 
changed his mind and concluded that the State had deliberately elicited the 
evidence because it knew that identity was the defensive issue.  At that 
point, the State called its investigator as a witness in the hearing to show 
that the female complainant had not mentioned anything about the merchandise 
being stolen when he interviewed her.  Next, Appellant’s trial counsel 
was allowed to take the complainants on voir dire concerning the evidence of the 
extraneous offense at issue as well as other matters not pertinent to the motion 
for mistrial.  The trial court recessed until the next morning.  Trial 
counsel did not object to the recess or request that the jury be instructed 
before it was dismissed.  The next morning, the trial court instructed the 
jury to disregard the female complainant’s last statement without repeating 
what it was.
        Based 
on our review of the record, we cannot say that the impropriety was clearly 
calculated to inflame the minds of the jury, nor can we say that it suggests the 
impossibility of withdrawing the impression produced on the minds of the jury.[8]  Further, we must conclude that the trial court’s 
instruction sufficiently cured any harm from the improper argument.[9]  We consequently hold that the trial court did not 
abuse its discretion in denying Appellant’s motion for mistrial.  We 
overrule his third issue.
        In 
his fourth issue, Appellant contends that the trial court erred in allowing a 
police officer to testify that the male complainant identified the voice of one 
of the robbers as that of Appellant’s.  The officer testified, over 
Appellant’s hearsay objections, that the male complainant had told the officer 
that he recognized the voice of one of the robbers and that it sounded like 
Appellant’s.  The trial court stated that it was not admitting the 
evidence for the truth of the matter asserted but to show the officer’s 
motivation for his later actions.  The trial court instructed the jury to 
consider the evidence only for the limited purpose of showing the officer’s 
motivation.  We presume that the jury followed the limiting instruction.[10]  Appellant lodged no other objections at trial to 
this testimony.  We overrule his fourth issue.
Ineffective 
Assistance of Counsel Claims
        In 
his fifth issue, Appellant contends that he was denied effective assistance of 
counsel when his trial counsel failed to move to suppress or otherwise object to 
evidence seized as a result of the unlawful detention of Appellant.  
Regarding the evidence seized from his companion, Appellant had no standing to 
file a motion to suppress or object to its admission.[11]  
Regarding the testimony connecting Appellant to the wedding ring and all 
evidence about the crack pipe, given the evidence as detailed in our sufficiency 
analysis, we agree with Appellant that the Terry stop was illegal.[12]  Officer Schulte saw two black men in dark clothing 
in a multiethnic neighborhood blocks away from the crime scene, walking fast and 
looking over their shoulders.  That is not enough to generate reasonable 
suspicion.[13]  Appellant’s trial 
counsel should have moved to suppress or otherwise objected to the admission of 
the testimony about the ring and the crack pipe.  Unfortunately, however, 
the record does not reveal the basis for Appellant’s trial counsel’s 
decisions not to file a motion to suppress or object to the admission of the 
evidence.  This court will not “reverse a conviction on ineffective 
assistance of counsel grounds when counsel's actions or omissions may have been 
based upon tactical decisions, but the record contains no specific explanation 
for counsel's decisions.”[14]  Accordingly, 
based upon the applicable standard of review,[15] we 
overrule Appellant’s fifth issue.
        In 
his sixth and seventh issues, Appellant complains that he received ineffective 
assistance at voir dire when trial counsel failed to move for mistrial following 
a prejudicial comment by a veniremember and when trial counsel failed to strike 
a juror who knew Appellant from the juror’s work as a jailer.  In his 
ninth issue, Appellant complains that his trial counsel rendered ineffective 
assistance by not calling the male complainant to testify.  Again, the 
trial record is devoid of evidence showing trial counsel’s reasons for these 
strategic decisions.[16]  Accordingly, based 
upon the applicable standard of review,[17] we 
overrule Appellant’s sixth, seventh, and ninth issues.
        In 
his eighth issue, Appellant complains that he was denied effective assistance of 
counsel when trial counsel failed to object to the admission, in one exhibit, of 
the co-defendant’s bandana and Appellant’s crack pipe.  Appellant 
contends that the placing of the two items in one exhibit improperly connected 
Appellant to the co-defendant who was connected to the robbery through the 
bandana.  Appellant cites no law to support his theory that the admission 
of the two items of evidence in one exhibit was not proper.[18]  
We therefore overrule this issue.
Conclusion
        Having 
overruled Appellant’s nine issues, we affirm the trial court’s judgment.
   
 
                                                                  PER 
CURIAM
   
PANEL F:   DAUPHINOT, 
LIVINGSTON, and HOLMAN, JJ.
 
DO NOT PUBLISH
Tex. R. 
App. P. 47.2(b)
 
DELIVERED: October 14, 2004

 
NOTES
1.  See 
Tex. R. App. P. 47.4.
2.  See 
Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Burden 
v. State, 55 S.W.3d 608, 612 (Tex. Crim. App. 2001); Dewberry v. State, 
4 S.W.3d 735, 740 (Tex. Crim. App. 1999), cert. denied, 529 U.S. 1131 
(2000) (all providing legal sufficiency standard of review); Zuniga v. State, 
No. 539-02, 2004 WL 840786, at *4, 7, 9 (Tex. Crim. App. Apr. 21, 2004); Sims 
v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003); Cain v. State, 
958 S.W.2d 404, 407 (Tex. Crim. App. 1997) (all providing factual sufficiency 
standard of review).
3.  Waldo 
v. State, 746 S.W.2d 750, 752 (Tex. Crim. App. 1988).
4.  See 
Swallow v. State, 829 S.W.2d 223, 227 (Tex. Crim. App. 1992).
5.  Colburn 
v. State, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998).
6.  Hinojosa 
v. State, 4 S.W.3d 240, 253 (Tex. Crim. App. 1999).
7.  See 
Ladd v. State, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999), cert. denied, 
529 U.S. 1070 (2000).
8.  See 
Hinojosa, 4 S.W.3d at 253.
9.  See 
Waldo, 746 S.W.2d at 753.
10.  
See Colburn, 966 S.W.2d at 520; Turner, Collie & Braden, Inc. v. 
Brookhollow, Inc., 642 S.W.2d 160, 167 (Tex. 1982); see also Tex. R. Evid. 105(a).
11.  
See Rakas v. Illinois, 439 U.S. 128, 133-34, 99 S. Ct. 421, 425-26 
(1978); Villarreal v. State, 935 S.W.2d 134, 137 (Tex. Crim. App. 1996).
12.  
Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868 (1968).
13.  
See Garcia v. State, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001).
14.  
Bone v. State, 77 S.W.3d 828, 830 (Tex. Crim. App. 2002).
15.  
See Strickland v. Washington, 466 U.S. 668, 687-90, 694, 104 S. Ct. 2052, 
2064-66, 2068 (1984); Thompson v. State, 9 S.W.3d 808, 812-14 (Tex. Crim. 
App. 1999).
16.  
See Bone, 77 S.W.3d at 830.
17.  
See Strickland, 466 U.S. at 687-90, 694, 104 S. Ct. at 2064-66, 2068; Thompson, 
9 S.W.3d at 812-14.
18.  
See Tex. R. App. P. 
38.1(h); Tong v. State, 25 S.W.3d 707, 710 (Tex. Crim. App. 2000), cert. 
denied, 532 U.S. 1053 (2001); Mosley v. State, 983 S.W.2d 249, 256 
(Tex. Crim. App. 1998) (op. on reh’g), cert. denied, 526 U.S. 1070 
(1999).